No. 22-2905

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

———————————

CITY OF EAST ST. LOUIS, Individually and
on behalf of all others similarly situated,

Plaintiff/Appellant,

v.

NETFLIX, INC.; DISNEY PLATFORM DISTRIBUTION, INC.;
APPLE INC.; HULU, LLC; WARNERMEDIA DIRECT, LLC;
AMAZON.COM SERVICES LLC; CBS INTERACTIVE INC.;
YOUTUBE LLC; CURIOSITYSTREAM, INC.; PEACOCK TV, LLC;
DIRECTV, LLC; and DISH NETWORK, L.L.C.,

Defendants/Appellees.

———————————

**Appeal from the United States District Court
for the Southern District of Illinois**

———————————

**JOINT BRIEF OF APPELLEES NETFLIX, INC., DISNEY PLATFORM
DISTRIBUTION, INC., APPLE INC., HULU, LLC, WARNERMEDIA
DIRECT, LLC, AMAZON.COM SERVICES LLC, CBS INTERACTIVE INC.,
YOUTUBE LLC, CURIOSITYSTREAM, INC., PEACOCK TV, LLC, AND
DIRECTV, LLC**

———————————

John P. Jett
Ava J. Conger
K. Bradford Sears
KILPATRICK TOWNSEND
 & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Adam H. Charnes
KILPATRICK TOWNSEND
 & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 922-7106
Facsimile: (214) 481-0517
acharnes@kilpatricktownsend.com

*Counsel for DIRECTV, LLC and WarnerMedia Direct, LLC*

(additional counsel listed in signature block)

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

WarnerMedia Direct, LLC; DIRECTV, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kilpatrick Townsend & Stockton LLP

Sandberg Phoenix & Von Gontard P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        See attached.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Adam H. Charnes     Date: 05/04/2023

Attorney's Printed Name: Adam H. Charnes

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✓]  **No** [ ]

Address: Kilpatrick Townsend & Stockton LLP, 2001 Ross Avenue, Suite 4400, Dallas, TX 75201

Phone Number: (214) 922-7106     Fax Number: (214) 481-0517

E-Mail Address: acharnes@kilpatricktownsend.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

WarnerMedia Direct, LLC; DIRECTV, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kilpatrick Townsend & Stockton LLP

Sandberg Phoenix & Von Gontard P.C.

(3)    If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

See attached.

   ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ John P. Jett      Date: 05/04/2023

Attorney's Printed Name: John P. Jett

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, GA 30309-4528

Phone Number: (404) 815-6020      Fax Number: (404) 541-3174

E-Mail Address: jjett@kilpatricktownsend.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

WarnerMedia Direct, LLC; DIRECTV, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kilpatrick Townsend & Stockton LLP

Sandberg Phoenix & Von Gontard P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

See attached.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Ava Conger      Date: 05/04/2023

Attorney's Printed Name: Ava Conger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]   **No** [✓]

Address: Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, GA 30309-4528

Phone Number: (404) 815-6639      Fax Number: (404) 541-3367

E-Mail Address: aconger@kilpatricktownsend.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

WarnerMedia Direct, LLC; DIRECTV, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kilpatrick Townsend & Stockton LLP

Sandberg Phoenix & Von Gontard P.C.

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

See attached.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ K. Bradford Sears      Date: 05/04/2023

Attorney's Printed Name: K. Bradford Sears

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, GA 30309-4528

Phone Number: (404) 815-6266      Fax Number: (404) 953-6921

E-Mail Address: bsears@kilpatricktownsend.com

rev. 12/19 AK

## WarnerMedia Direct, LLC; DIRECTV, LLC
## Parent Corporations and Publicly Held Companies

### WarnerMedia Direct, LLC

Defendant WarnerMedia Direct, LLC states that Warner Bros. Discovery, Inc., a publicly-traded company, is its ultimate parent corporation. No publicly held company owns 10% or more of Warner Bros. Discovery, Inc.'s stock.

### DIRECTV, LLC

DIRECTV, LLC states it is a wholly owned subsidiary of DIRECTV Holdings LLC. DIRECTV Holdings LLC is a wholly owned subsidiary of DIRECTV Financing, LLC. DIRECTV Financing, LLC is a wholly owned subsidiary of DIRECTV Financing Holdco, LLC. DIRECTV Financing Holdco, LLC is a wholly owned subsidiary of DIRECTV Entertainment Holdings LLC. DIRECTV Entertainment Holdings LLC is jointly owned by AT&T Inc. (70%) and TPG VIII Merlin Investment Holdings, L.P. (30%). AT&T Inc. is a publicly traded company on the New York Stock Exchange. There is no one person or group that owns 10% or more of the stock of AT&T Inc. TPG VIII Merlin Investment Holdings, L.P. is a privately held limited partnership.

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amazon.com Services LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        See attached.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: _Helgi Walker_    Date: November 2, 2022

Attorney's Printed Name: Helgi C. Walker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✓]  **No** [ ]

Address: 1050 Connecticut Ave., NW

Washington, D.C.  20036

Phone Number: (202) 887-3599    Fax Number: (202) 530-9595

E-Mail Address: hwalker@gibsondunn.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Amazon.com Services LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        See attached.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Jessica L. Wagner      Date: November 15, 2022

Attorney's Printed Name: Jessica L. Wagner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1050 Connecticut Ave., NW

    Washington, D.C. 20036

Phone Number: (202) 955-8652      Fax Number: (202) 831-6131

E-Mail Address: jwagner@gibsondunn.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2905</u>

Short Caption: <u>City of East St. Louis v. Netflix, Inc. et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

          ☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)        The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

        <u>Amazon.com Services LLC</u>

(2)        The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

        <u>Gibson, Dunn & Crutcher LLP</u>

(3)        If the party, amicus or intervenor is a corporation:

        i)        Identify all its parent corporations, if any; and

                <u>See attached.</u>

        ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

                <u>See attached.</u>

(4)        Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        <u>N/A</u>

(5)        Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        <u>N/A</u>

Attorney's Signature: <u>/s/ Maria Monaghan</u>        Date: <u>April 25, 2023</u>

Attorney's Printed Name: <u>Maria Monaghan</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: <u>1050 Connecticut Ave., NW</u>

        <u>Washington, D.C. 20036</u>

Phone Number: <u>202-887-3573</u>        Fax Number: <u>202-831-6162</u>

E-Mail Address: <u>mmonaghan@gibsondunn.com</u>

rev. 12/19 AK

## APPELLEE AMAZON.COM SERVICES LLC'S
## RULE 26.1 DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Appellee Amazon.com Services LLC hereby discloses that it is a wholly owned subsidiary of Amazon.com Sales, Inc., which is a wholly owned subsidiary of Amazon.com, Inc.  Amazon.com, Inc. is a publicly traded company (NASDAQ: AMZN) with no parent corporation.  No publicly held corporation owns 10% or more of its stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

     Peacock TV, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     Willkie Farr & Gallagher LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

        See attached

     ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

Attorney's Signature: /s/ David P. Murray      Date: May 4, 2023

Attorney's Printed Name:  David P. Murray

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address:  Willkie Farr & Gallagher LLP

     1875 K Street, NW, Washington, DC 20006

Phone Number: (202) 303-1112      Fax Number: (202) 303-2112

E-Mail Address: dmurray@willkie.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Peacock TV, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Willkie Farr & Gallagher LLP

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

See attached

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Matthew W. Johnson          Date: May 4, 2023

Attorney's Printed Name:  Matthew W. Johnson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ✔

Address:  Willkie Farr & Gallagher LLP

1875 K Street, NW, Washington, DC 20006

Phone Number:  (202) 303-1218          Fax Number:  (202) 303-2000

E-Mail Address: mjohnson@willkie.com

rev. 12/19 AK

**Peacock TV, LLC**
**Parent Corporations and Publicly Held Companies**

Peacock TV, LLC is wholly owned by NBCUniversal Media, LLC, which is

indirectly owned by Comcast Corporation, a publicly held corporation.  No other

publicly held corporation owns 10% or more of the equity of Peacock TV, LLC.

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
CBS Interactive Inc.


(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Covington & Burling LLP


(3)     If the party, amicus or intervenor is a corporation:

i)       Identify all its parent corporations, if any; and

Paramount Global (f/k/a ViacomCBS Inc.)

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Paramount Global (f/k/a ViacomCBS Inc.)

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Mitchell A. Kamin          Date: November 14, 2022

Attorney's Printed Name: Mitchell A. Kamin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✔]  **No** [ ]

Address: Covington & Burling LLP

1999 Avenue of the Stars, Suite 3500, Los Angeles, CA 90067-4643

Phone Number: (424) 332-4800          Fax Number: (424) 332-4749

E-Mail Address: mkamin@cov.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

CBS Interactive Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Covington & Burling LLP

(3)  If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

Paramount Global (f/k/a ViacomCBS Inc.)

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Paramount Global (f/k/a ViacomCBS Inc.)

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Neema Sahni          Date: 11/15/2022

Attorney's Printed Name: Neema Sahni

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✔

Address: Covington & Burling LLP

1999 Avenue of the Stars, Suite 3500, Los Angeles, CA 90067-4643

Phone Number: (424) 332-4800          Fax Number: (424) 332-4749

E-Mail Address: nsahni@cov.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    CBS Interactive Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Covington & Burling LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Paramount Global (f/k/a ViacomCBS Inc.)

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Paramount Global (f/k/a ViacomCBS Inc.)

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Jordan S. Joachim    Date: 11/15/2022

Attorney's Printed Name: Jordan S. Joachim

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Covington & Burling LLP

    620 Eighth Avenue  New York, NY 10018

Phone Number: (212) 841-1086    Fax Number: (646) 441-9086

E-Mail Address: jjoachim@cov.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    YouTube LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Perkins Coie LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Google LLC which is a subsidiary of XXVI Holdings, Inc. which is a subsidiary of Alphabet Inc.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly traded company holds more than 10% of Alphabet Inc.'s stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Sunita Bali    Date: April 27, 2023

Attorney's Printed Name: Sunita Bali

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 505 Howard Street, Suite 1000

San Francisco, CA 94105

Phone Number: 415.344.7000    Fax Number: 415.344.7265

E-Mail Address: SBali@perkinscoie.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

YouTube LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Perkins Coie LLP

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

Google LLC which is a subsidiary of XXVI Holdings, Inc. which is a subsidiary of Alphabet Inc.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly traded company holds more than 10% of Alphabet Inc.'s stock

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Elliott J. Joh     Date: April 27, 2023

Attorney's Printed Name:  Elliott J. Joh

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Perkins Coie LLP

505 Howard St., Suite 1000, San Francisco, CA 94105

Phone Number: 415.344.7000      Fax Number: 415.344.7050

E-Mail Address: EJoh@perkinscoie.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    YouTube LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Perkins Coie LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Google LLC which is a subsidiary of XXVI Holdings, Inc. which is a subsidiary of Alphabet Inc.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly traded company holds more than 10% of Alphabet Inc.'s stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Marc S. Martin    Date: April 27, 2023

Attorney's Printed Name: Marc S. Martin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 700 13th Street, NW, Suite 800

    Washington, DC 20005

Phone Number: 202-654-6200    Fax Number: 202-654-6211

E-Mail Address: MMartin@perkinscoie.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

YouTube LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Perkins Coie LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Google LLC which is a subsidiary of XXVI Holdings, Inc. which is a subsidiary of Alphabet Inc.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly traded company holds more than 10% of Alphabet Inc.'s stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kathleen A. Stetsko      Date: April 27, 2023

Attorney's Printed Name:  Kathleen A. Stetsko

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address:  110 North Wacker Drive, 34th Floor

Chicago, IL 60606

Phone Number: 312.324.8400      Fax Number:  312.324.9400

E-Mail Address: KStetsko@perkinscoie.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

CuriosityStream, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ArentFox Schiff LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Adam Bowser    Date: 5/4/2023

Attorney's Printed Name: Adam Bowser

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address: ArentFox Schiff LLP, 1717 K Street, NW, Washington, DC 20006

Phone Number: (202) 857-6126    Fax Number: (202) 857-6395

E-Mail Address: adam.bowser@afslaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

CuriosityStream, Inc.

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ArentFox Schiff LLP

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Morgan R. Pankow      Date: 5/4/2023

Attorney's Printed Name:  Morgan R. Pankow

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address:  ArentFox Schiff LLP, 1717 K Street, NW, Washington, DC 20006

Phone Number:  (202) 857-6495      Fax Number:  (202) 857-6395

E-Mail Address: morgan.pankow@afslaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As     Clear Form

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Apple Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McDermott Will & Emery LLP

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: _____     Date: 05/04/2023

Attorney's Printed Name: Daniel Campbell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✓]     **No** [ ]

Address: McDermott Will & Emery LLP

444 West Lake Street, Suite 4000, Chicago, IL 60606

Phone Number: (312) 984-7701     Fax Number: (312) 984-7700

E-Mail Address: dcampbell@mwe.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Apple Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   McDermott Will & Emery LLP

(3)   If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and

      N/A

   ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ Jennifer Aronoff      Date: 5/4/23

Attorney's Printed Name:  Jennifer Aronoff

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]  **No** [✓]

Address:  McDermott Will & Emery LLP

   444 West Lake Street, Suite 4000, Chicago, IL 60606

Phone Number:  (312) 984-7747      Fax Number:  (312) 984-7700

E-Mail Address: jaronoff@mwe.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East. St. Louis v. Netflix, Inc. et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Netflix, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Armstrong Teasdale LLP

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

n/a

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Gregory G. Garre          Date: May 4, 2023

Attorney's Printed Name:   Gregory G. Garre

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address:  Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004

Phone Number: 202-637-2207          Fax Number:  202-637-2201

E-Mail Address: gregory.garre@lw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East. St. Louis v. Netflix, Inc. et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Netflix, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Armstrong Teasdale LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Jean A. Pawlow    Date: May 4, 2023

Attorney's Printed Name: Jean A. Pawlow

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004

Phone Number: 202-637-2200    Fax Number: 202-637-2201

E-Mail Address: jean.pawlow@lw.com

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East. St. Louis v. Netflix, Inc. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Netflix, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Armstrong Teasdale LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Peter E. Davis    Date: May 4, 2023

Attorney's Printed Name:  Peter E. Davis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☑

Address:  Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004

Phone Number: 202-637-2200    Fax Number: 202-637-2201

E-Mail Address: peter.davis@lw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East. St. Louis v. Netflix, Inc. et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Netflix, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Armstrong Teasdale LLP

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         n/a

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Mary Rose Alexander      Date: May 4, 2023

Attorney's Printed Name: Mary Rose Alexander

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑   **No** ☐

Address: Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: 312-876-7700      Fax Number: 312-993-9767

E-Mail Address: mary.rose.alexander@lw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2905

Short Caption: City of East. St. Louis v. Netflix, Inc. et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Netflix, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Armstrong Teasdale LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

         n/a

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         n/a

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     n/a

Attorney's Signature: /s/ Robert C. Collins      Date: May 4, 2023

Attorney's Printed Name:  Robert C. Collins

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐ **No** ☑

Address:  Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: 312-876-7700      Fax Number:  312-993-9767

E-Mail Address: robert.collins@lw.com

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __22-2905_____

Short Caption: __City of East St. Louis v. Netflix, Inc., et al._____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Hulu, LLC; Disney Platform Distribution, Inc.

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Wilson Sonsini Goodrich & Rosati, Professional Corporation; Bryan Cave Leighton Paisner LLP

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        See attached.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: __/s/ Victor Jih_____    Date: __05/04/2023_____

Attorney's Printed Name: __Victor Jih_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑   **No** ☐

Address: __Wilson Sonsini Goodrich & Rosati, Professional Corporation, 1900 Avenue of the Stars, Suite 2800__

    Los Angeles, CA 90067

Phone Number: __(424) 446-6904_____    Fax Number: __(866) 974-7329_____

E-Mail Address: __vjih@wsgr.com_____

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Hulu, LLC; Disney Platform Distribution, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wilson Sonsini Goodrich & Rosati, Professional Corporation; Bryan Cave Leighton Paisner LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

See attached.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kelly H. Yin    Date: 05/04/2023

Attorney's Printed Name: Kelly H. Yin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✔]  No [ ]

Address: Wilson Sonsini Goodrich & Rosati, Professional Corporation, 1900 Avenue of the Stars, Suite 2800

Los Angeles, CA 90067

Phone Number: (424) 446-6926    Fax Number: (866) 974-7329

E-Mail Address: kyin@wsgr.com

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2905

Short Caption: City of East St. Louis v. Netflix, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Hulu, LLC; Disney Platform Distribution, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wilson Sonsini Goodrich & Rosati, Professional Corporation; Bryan Cave Leighton Paisner LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

See attached.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Darci F. Madden    Date: 05/04/2023

Attorney's Printed Name: Darci F. Madden

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✔    No ☐

Address: Bryan Cave Leighton Paisner LLP, One Metropolitan Square 211 North Broadway, Suite 3600

St. Louis, MO 63102

Phone Number: (314) 259-2000    Fax Number: (314) 259-2020

E-Mail Address: dfmadden@bclplaw.com

rev. 12/19 AK

# HULU, LLC'S AND DISNEY PLATFORM DISTRIBUTION, INC.'S RULE 26.1 DISCLOSURE STATEMENT

## Hulu, LLC

Appellee Hulu, LLC discloses the following corporate entities:  The Walt Disney Company, a publicly held corporation, and Comcast Corporation, a publicly held corporation.  No publicly held company owns 10% or more of The Walt Disney Company's or Comcast Corporation's stock.

## Disney Platform Distribution, Inc.

Appellee Disney Platform Distribution, Inc. discloses that it is a wholly owned subsidiary of Disney Online, which is a wholly owned subsidiary of The Walt Disney Company.  No publicly held company owns 10% or more of The Walt Disney Company's stock.

# TABLE OF CONTENTS

PAGE

RULE 26.1 DISCLOSURE STATEMENTS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ........................................................................iii

JURISDICTIONAL STATEMENT ............................................................. 1

INTRODUCTION ......................................................................................... 2

STATEMENT OF THE ISSUES................................................................. 4

STATEMENT OF THE CASE..................................................................... 5

I.      The CVCL created a statewide system requiring facilities-based video
        service providers to obtain authorization and pay video service
        provider fees. ................................................................................... 5

II.     The City sued the Streaming Companies, asserting alleged violations
        of the CVCL and other claims. ...................................................... 7

III.    The District Court dismissed all of the City's claims with prejudice. ............. 9

SUMMARY OF THE ARGUMENT ......................................................... 12

ARGUMENT ............................................................................................... 14

I.      Standard of review ......................................................................... 14

II.     The District Court correctly dismissed the City's claims under the
        CVCL. ............................................................................................... 15

        A.      The City lacks an express right of action for the Streaming
                Companies' alleged statutory violations................................ 15

        B.      The City lacks an implied right of action. ............................. 18

                1.      An implied right of action is not necessary to provide an
                        adequate remedy for CVCL violations........................ 19

2.      An implied right of action is inconsistent with the CVCL's
        purpose. ................................................................................. 25

3.      The City cannot satisfy the remaining implied right of
        action factors.......................................................................... 29

III.    The District Court correctly dismissed the City's trespass claim and
        derivative unjust enrichment claim. .................................................. 32

    A.      The City cannot state a trespass claim. ............................................ 32

        1.      The City cannot allege unauthorized entry............................... 33

        2.      The City cannot allege tangible intrusion on public
                property..................................................................................... 36

        3.      The City cannot explain how the Streaming Companies
                interfered with its possessory rights. ....................................... 38

    B.      The City cannot state an unjust enrichment claim. ............................ 39

IV.     The District Court correctly dismissed the City's ordinance claim. .............. 40

    A.      The City's ordinances do not authorize this action............................. 40

    B.      The City's ordinances do not prohibit the alleged conduct.................. 42

CONCLUSION........................................................................................ 44

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE  REQUIREMENTS, AND TYPE-STYLE REQUIREMENT

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Abbasi ex rel. Abbasi v. Paraskevoulakos,*
    718 N.E.2d 181 (Ill. 1999) ........................................................... 18, 19

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.,*
    929 F.3d 865 (7th Cir. 2019) ............................................................. 17

*Boogaard v. Nat'l Hockey League,*
    891 F.3d 289 (7th Cir. 2018) ............................................................. 38

*Borough of Longport v. Netflix, Inc.,*
    No. 21-15303 (SRC) (MAH), 2022 WL 1617740 (D.N.J. May 20,
    2022), *appeal filed*, No. 22-2139 (3d Cir. June 23, 2022) ................. 19

*Brannan v. Am. Tel. & Tel. Co.,*
    362 S.W.2d 236 (Tenn. 1962) ............................................................ 39

*Cahn v. City of Highland Park,*
    No. 11 CV 06082, 2012 WL 4483480 (N.D. Ill. Sept. 25, 2012) ...................... 38

*Caldwell v. City of Chicago,*
    No. 08 C 710, 2010 WL 2722207 (N.D. Ill. July 8, 2010) ............................... 35

*Carmichael v. Prof'l Trans., Inc.,*
    --- N.E.3d ----, 2021 IL App (1st) 201386 ............................................. 22

*Channon v. Westward Mgmt., Inc.,*
    --- N.E.3d ----, 2022 IL 128040 .................................... 18, 19, 21, 29

*Chi. & W.I.R. Co. v. Ayres,*
    106 Ill. 511 (1883) ......................................................................... 36

*City of Ashdown v. Netflix, Inc.,*
    52 F.4th 1025 (8th Cir. 2022) .......................................... 20, 25, 31

*City of Ashdown v. Netflix, Inc.,*
    565 F. Supp. 3d 1111 (W.D. Ark. 2021) ........................................ 19, 20

*City of Chicago v. FCC,*
    199 F.3d 424 (7th Cir. 1999) ............................................................. 34

*City of Creve Coeur v. Netflix, Inc.*,
    No. 18SL-CC02819, 2020 WL 13120428 (Mo. Cir. Ct. Dec. 30, 2020) ........... 20

*City of Fort Scott v. Netflix, Inc.*,
    No. BB-2021-CV-000166, 2022 WL 16901200 (Kan. Dist. Ct.,
    Bourbon Cnty. Oct. 10, 2022), *appeal filed*, No. 125784 (Kan. App.
    Nov. 22, 2022) ................................................................................................ 20

*City of Kenner v. Netflix, Inc.*,
    No. 22-CA-466, --- So. 3d ----, 2023 WL 3216197 (La. Ct. App., 5th
    Cir. May 3, 2023) ............................................................................................ 20

*City of Kenner v. Netflix, Inc.*,
    No. 814-168, 2022 WL 4101746 (La. Dist. Ct., 24th Dist. Aug. 25,
    2022) ............................................................................................................... 20

*City of Knoxville v. Netflix, Inc.*,
    656 S.W.3d 106 (Tenn. 2022) .......................................................................... 20

*City of Lancaster v. Netflix*,
    No. 21STCV01881, 2021 WL 4470939 (Cal. Super. Ct. Sept. 20,
    2021), *final order*, 2022 WL 1744233 (Apr. 13, 2022), *appeal filed*,
    No. B321481 (Cal. Ct. App., 2d Dist. June 1, 2022) ................................... 19, 20

*City of Maple Heights v. Netflix, Inc.*,
    --- N.E.3d ----, 2022-Ohio-4174 (Nov. 30, 2022) .............................................. 20

*City of New Boston v. Netflix, Inc.*,
    565 F. Supp. 3d 865 (E.D. Tex. 2021) ................................................. 19, 21, 24

*City of Quincy v. Daniels*,
    615 N.E.2d 839 (Ill. App. 4 Dist. 1993) .......................................................... 35

*City of Reno v. Netflix, Inc.*,
    52 F.4th 874 (9th Cir. 2022) ......................................................... 18, 20, 26, 31

*City of Reno v. Netflix, Inc.*,
    558 F. Supp. 3d 991 (D. Nev. 2021) .......................................................... 19, 20

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) .......................................................................... 39

*Fisher v. Lexington Health Care, Inc.*,
    722 N.E.2d 1115 (Ill. 1999) ................................................................. 11, 18, 19

*Goe v. Zucker*,
    43 F.4th 19 (2d Cir. 2022) ................................................................ 41

*Gwinnett County v. Netflix, Inc.*,
    No. 20-A-07909-10, 2022 WL 678784 (Ga. Super. Ct. Feb. 18, 2022) ....... 19, 20

*Gwinnett County v. Netflix, Inc.*,
    No. A22A1172, --- S.E.2d ----, 2023 WL 2398217 (Ga. Ct. App. Mar.
    8, 2023), *pet. for cert. filed*, No. S23C0768 (Ga. Mar. 28, 2023) .......... 20, 21, 24

*Hildreth v. Butler*,
    960 F.3d 420 (7th Cir. 2020) ............................................................ 16

*Horist v. Sudler & Co.*,
    941 F.3d 274 (7th Cir. 2019) .......................................... 14, 18, 21, 25, 29, 31

*In re Chi. Flood Litig.*,
    680 N.E.2d 265 (Ill. 1997) .............................................................. 36

*In re MCI, Inc.*,
    No. 02-13533 (AJG), 2006 WL 538556 (Bankr. S.D.N.Y. Feb. 1,
    2006) ....................................................................................... 36, 37

*Johnson v. Hondo, Inc.*,
    125 F.3d 408 (7th Cir. 1997) ............................................................ 40

*Karow v. Student Inns, Inc.*,
    357 N.E.2d 682 (Ill. App. 4 Dist. 1976) .............................................. 35

*Labell v. City of Chicago*,
    147 N.E.3d 732 (Ill. App. 1 Dist. 2019) ............................................. 37

*Loftus v. Mingo*,
    511 N.E.2d 203 (Ill. App. 4 Dist. 1987) ............................................. 32

*Lyons v. Ryan*,
    780 N.E.2d 1098 (Ill. 2002) ............................................................ 22

*Medicos Pain & Surgical Specialists, S.C. v. Travelers Indem. Co. of Am.*,
    103 N.E.3d 965 (Ill. App. 1 Dist. 2018) ......................................... 15, 23

*Metzger v. DaRosa*,
    805 N.E.2d 1165 (Ill. 2004) ............................................................ 28

*Peeler v. MCI, Inc.*,
    447 F.3d 992 (7th Cir. 2006) (per curiam)........................................35

*People ex rel. Barrett v. Finnegan*,
    38 N.E.2d 715 (Ill. 1941) ..................................................................23

*People ex rel. Devine v. Time Consumer Mktg., Inc.*,
    782 N.E.2d 761 (Ill. App. 1 Dist. 2002) ..........................................23

*Perry v. Village of Arlington Heights*,
    977 F. Supp. 896 (N.D. Ill. 1997)......................................................23

*Primeco Personal Commc'ns, L.P. v. ICC*,
    750 N.E.2d 202 (Ill. 2001)..................................................................34

*Saletech, LLC v. E. Balt, Inc.*,
    20 N.E.3d 796 (Ill. App. 1 Dist. 2014) .............................................39

*Scheidler v. Indiana*,
    914 F.3d 535 (7th Cir. 2019) .............................................................16

*Schilling v. Rogers*,
    363 U.S. 666 (1960) .............................................................................17

*Schweihs v. Chase Home Fin. LLC*,
    187 N.E.3d 1196 (Ill. App. 1 Dist. 2021) ..................................32, 33

*Territory of Alaska v. Am. Can Co.*,
    358 U.S. 224 (1959) .............................................................................42

*Todd v. Societe Bic, S.A.*,
    21 F.3d 1402 (7th Cir. 1994) .............................................................38

*Torry v. City of Chicago*,
    932 F.3d 579 (7th Cir. 2019) .............................................................38

*Wedemeyer v. CSX Transp., Inc.*,
    850 F.3d 889 (7th Cir. 2017)........................................................16, 38

*West v. Louisville Gas & Elec. Co.*,
    951 F.3d 827 (7th Cir. 2020)..............................................................39

*Windy City Metal Fabricators & Supply v. CIT Tech. Fin. Servs.*,
    536 F.3d 663 (7th Cir. 2008)..............................................................41

**Statutes**

15 ILCS 205/4 ....................................................................................... 6, 23

65 ILCS
    5/11-42-11.05(d) ...................................................................... 7, 16
    5/11-42-11.05(g) ............................................................................ 16

220 ILCS
    5/21-101 .......................................................................................... 11
    5/21-101(a)–(b) .............................................................................. 30
    5/21-101(a)–(f) ............................................................................... 31
    5/21-101(e) ...................................................................................... 29
    5/21-101(e)–(f) ................................................................................. 5
    5/21-101(f) ................................................................................. 29, 31
    5/21-101(f)–(g) ............................................................................... 25
    5/21-101(g) ...................................................................................... 30
    5/21-201(e) ...................................................................................... 43
    5/21-201(g) ........................................................................................ 6
    5/21-201(j)–(k) .................................................................................. 6
    5/21-201(v) .................................................................................. 9, 20
    5/21-301 .......................................................................................... 15
    5/21-301(a) ........................................................................................ 5
    5/21-301(b)–(c) ............................................................................... 30
    5/21-301(c)(1) ................................................................................. 30
    5/21-301(d) .................................................................................. 6, 30
    5/21-401(a)(1) .......................................................................... 6, 8, 26
    5/21-401(a)–(b) ................................................................................. 5
    5/21-401(b)–(e) ................................................................................. 6
    5/21-401(e)(2) ............................................................................... 6, 8
    5/21-401(f) ................................................................................... 7, 28
    5/21-801 .......................................................................................... 15
    5/21-801(b) ...................................................................... 6, 8, 26, 30
    5/21-901 .................................................................... 13, 15, 16, 17
    5/21-901(a) ......................................................... 7, 8, 21, 27, 28
    5/21-901(a)–(b) ......................................................................... 16, 27
    5/21-901(b) ........................................................................................ 7
    5/21-1001 ........................................................................................ 27
    5/21-1001(a) .................................................................................... 27
    5/21-1001(f)(9) ............................................................................... 27
    5/21-1301 .................................................................................. 10, 16
    5/21-1301(a) ...................................................... 6, 10, 19, 22
    5/21-1301(b)–(c) .............................................................................. 6
    5/21-1301(e)(4) .................................................................... 6, 22, 23

5/22-501(f) .................................................................................. 27
5/22-501(r) ................................................................................. 29

47 U.S.C. §
    151 Note, § 1105(4) .................................................. 43
    522(6) ............................................................................ 43
    542 ................................................................................. 30
    572(a)(1) ....................................................................... 30
    572(c)(2)(B) .................................................................. 30

## Rules

Ill. Sup. Ct. R.
    570 ................................................................................. 41
    572 ......................................................................... 40, 41
    572(a) ............................................................................ 41
    572(a)(3) ....................................................................... 41
    572(a)(4) ....................................................................... 41
    572(a)(5) ....................................................................... 41
    572(a)(6) ....................................................................... 41

## Ordinances

E. St. Louis Code of Ordinances §
    1-15 ........................................................................ 40, 41
    2-241–61 ........................................................................ 40
    82-19 ............................................................... 3, 40, 41, 42
    82-20 ............................................................................ 43

## Constitutional Provisions

ILL. CONST. 1970 art. V, § 15 ............................................... 22

## Other Authorities

Advisory Committee Notes to Fed. R. Evid. 201(a) ................. 42

75 Am. Jur. 2d Trespass § 29 (2018) ...................................... 36

Committee Cmt. to Rule 570 (Dec. 7, 2011) ........................... 41

IL S. Tran. 2007 Reg. Sess. No. 57 ......................................... 27

Ill. S.B. 678,
   Bill for an Act Concerning Telecommunications,
   98th Gen. Assemb., House Proceedings, May 31, 2007 (statement of
   Rep. Brosnahan)............................................................................................ 5

Implementation of Section 621(a)(1) of the Cable Communications Policy
   Act,
   34 FCC Rcd. 6,844 (2019) ................................................................ 43

Promoting Innovation and Competition in the Provision of Multichannel
   Video Programming Distribution Services,
   29 FCC Rcd. 15,995 (2014) ............................................................. 43

5 Wright & Miller,
   *Federal Practice & Procedure* § 1204 .............................................. 40

## JURISDICTIONAL STATEMENT

In accordance with Circuit Rule 28(b), Appellees Netflix, Inc., Disney

Platform Distribution, Inc., Apple Inc., Hulu, LLC, WarnerMedia Direct, LLC,

Amazon.com Services LLC, CBS Interactive Inc., YouTube LLC, CuriosityStream,

Inc., Peacock TV, LLC, and DIRECTV, LLC, (collectively, the "Streaming

Companies") state that the Amended Jurisdictional Statement filed by the City of

East St. Louis on March 8, 2023, is complete and correct.

**INTRODUCTION**

This appeal turns on a straightforward application of Illinois law to claims the District Court properly dismissed—joining trial and appellate courts across the country that have rejected similar claims against streaming companies. Plaintiff City of East St. Louis filed a putative class action against Defendant Streaming Companies in federal court, alleging violations of the Illinois Cable and Video Competition Law of 2007 ("CVCL"). The City also brought common law claims for trespass and unjust enrichment, along with a claim for violations of a municipal ordinance. But, as the District Court held, the CVCL does not authorize the City's statutory claims; Illinois precedent does not support the City's common law claims; and the East St. Louis Code does not permit the City's ordinance claim. The District Court's well-reasoned order dismissing the City's complaint should be affirmed.

*First*, the City lacks a right of action to bring its claims under the CVCL. The City alleges that the Streaming Companies provide "video service" under that statute without "State-issued authorization" and therefore owe five percent of a portion of their past and future gross revenues as video service provider fees. But nothing in the CVCL authorizes local governments to file such a claim. Rather, the statute vests enforcement authority in the Illinois Attorney General, consistent with the statute's stated purpose of creating a centralized authorization process that the legislature expressly deemed a matter of statewide concern.

The District Court correctly held that the City lacks an express right of action to sue the Streaming Companies and did not satisfy the demanding standard for implying one under Illinois law. Those holdings find further support in a wave of

recent decisions rejecting similar claims brought by local governments against streaming companies under analogous and substantially similar video service statutes. Twelve of those decisions held that local governments lack a right of action, and ten held that streaming companies are not subject to video service statutes anyway.

*Second*, the City does not plausibly allege common law claims for trespass or unjust enrichment. The complaint does not allege that the Streaming Companies maintain physical infrastructure ("facilities") that intrudes on or interferes with the City's property. Instead, the City alleges that the Streaming Companies commit a trespass by interconnecting with private network facilities owned and operated by third-party Internet service providers ("ISPs"), and by arranging for those ISPs to deliver content over wirelines that the ISPs have lawfully placed in the public rights-of-way. No Illinois case supports a trespass finding based on these types of allegations. Moreover, the City concedes that its derivative unjust enrichment claim rises or falls with its trespass claim. The District Court appropriately dismissed both.

*Third*, the City cannot pursue an ordinance claim under § 82-19 of the East St. Louis Code, which prohibits the resale of cable service. That ordinance may only be enforced through an administrative proceeding before the Regulatory Affairs Court or a criminal proceeding under the rules of criminal procedure. No language in § 82-19 purports to authorize a civil action like this one. And in any event, the

Streaming Companies do not resell cable service. The District Court properly dismissed this claim, too.

The District Court's dismissal with prejudice of all the City's claims should be affirmed.

## STATEMENT OF THE ISSUES

1.    Whether the District Court correctly dismissed the City's CVCL claims, where the CVCL provides no express right of action for local governments to bring those claims, and where judicially implying a right of action would contravene the legislature's decision to create a centralized framework administered and enforced by the State.

2.    Whether the District Court correctly dismissed the City's trespass and unjust enrichment claims, where the City failed to plausibly allege the Streaming Companies physically intruded on or interfered with its rights-of-way, and where the City concedes its derivative unjust enrichment claim cannot survive without its trespass claim.

3.    Whether the District Court correctly dismissed the City's claim for a violation of a City ordinance prohibiting the resale of cable service, where the cited ordinance may not be enforced in a civil action like this one, and where the City failed to plausibly allege that the Streaming Companies have resold cable service.

## STATEMENT OF THE CASE

I.    **The CVCL created a statewide system requiring facilities-based video service providers to obtain authorization and pay video service provider fees.**

The Illinois Cable and Video Competition Law regulates certain entities "seeking to provide cable service or video service in th[e] State." 220 ILCS 5/21-301(a). Before 2007, entities seeking to "build out" and operate facilities in the public rights-of-way to provide cable or video service ("facilities-based" providers) had to "go municipality by municipality" to obtain authorization. Ill. S.B. 678, Bill for an Act Concerning Telecommunications, 98th Gen. Assemb., House Proceedings, May 31, 2007, at 234 (statement of Rep. Brosnahan).[1]

The CVCL changed that. Finding the "provision of competitive cable services and video services" to be "a matter of statewide concern that extends beyond the boundaries of individual local units of government," the General Assembly established a "State authorization process" with "uniform standards and procedures." 220 ILCS 5/21-101(e)–(f).[2]

This centralized process allows cable and video service providers to apply to the Illinois Commerce Commission for permission to "use the public rights-of-way for the installation or construction of facilities for the provision of" service, thereby eliminating the need to negotiate with individual local governments. *Id.* 5/21-

---

[1] Available on Westlaw at IL H.R. Tran. 2007 Reg. Sess. No. 65.

[2] Other states enacted substantially similar video service statutes around the same time that Illinois enacted the CVCL. Multiple courts have recognized that these statutes reduced municipal authority over video service providers and vested enforcement authority in the state. *See infra* at 19–20.

401(a)–(b), 5/21-201(g). The Commission reviews all applications as the relevant "franchising authority." *Id.* 5/21-301(d). And it ultimately grants a "State-issued authorization" to applicants that satisfy the statutory requirements. *Id.* 5/21-401(a)(1), (b)–(e).

"Holders" of an authorization from the Commission may then "use, occupy, and construct facilities in the public rights-of-way for the delivery of cable service or video service" in the geographic area designated by the application. *Id.* 5/21-201(j)–(k), 401(e)(2). In return, the holder must pay a "service provider fee" to the local government in each area where it provides service—so long as the local government "adopt[s] an ordinance imposing such a fee." *Id.* 5/21-801(b) (capping any such fee at "5% of gross revenues").

The CVCL also contains a detailed enforcement mechanism. Consistent with its stated purposes of uniformity and centralization, the legislature designated the Illinois Attorney General as "responsible for administering" the statute and for "ensuring holders' compliance." *Id.* 5/21-1301(a). Such authority includes the express powers to "conduct an investigation regarding possible violations by holders" and to "bring an action in a court of competent jurisdiction in the name of the People of the State against the holder to obtain temporary, preliminary, or permanent injunctive relief and civil penalties." *Id.* 5/21-1301(b)–(c). It also includes all other enforcement "powers of the Attorney General" afforded by Illinois law, including statutory and common law powers. *Id.* 5/21-1301(e)(4); *see, e.g.*, 15 ILCS 205/4 (empowering the Attorney General to "investigate alleged violations of the

statutes which the Attorney General has a duty to enforce" and to "institute and prosecute all actions and proceedings in favor of or for the use of the State").

In contrast with the CVCL's broad grant of enforcement authority to the Attorney General, the statute provides only two limited rights of action to local governments. First, a local government may object to the transfer of a service authorization from a holder to a successor-in-interest. 220 ILCS 5/21-401(f). Second, a local government may file a deficiency action in the appropriate state "circuit court" after "audit[ing]" a "holder that has received State-issued authorization" and identifying an "underpayment of the holder's service provider fee." *Id.* 5/21-901(a); 65 ILCS 5/11-42-11.05(d) (incorporated by 220 ILCS 5/21-901(b)). No provision permits local governments to enforce the CVCL generally or to sue entities that are not holders based on an allegation that they are video service providers but have failed to obtain a state authorization.

## II.    The City sued the Streaming Companies, asserting alleged violations of the CVCL and other claims.

Notwithstanding the limited enforcement authority allocated to local governments under the CVCL, the City filed this putative class action against the Streaming Companies in federal court for alleged violations of that statute. App. 33 (Dkt. 167 ¶¶ 1–5, 70–79).[3] The City alleged that the Streaming Companies provide

---

[3] Where applicable, record citations are to the City's "Required Short Appendix." Because the City's appendix is not separately paginated (apart from the first page of documents included in the appendix), the Streaming Companies also cite the corresponding District Court docket entries and pagination. Thus, when referencing the "Amended Class Action Complaint" and the District Court's "Memorandum and Order," the Streaming Companies cite these documents as "App. 33 (Dkt. 167 ¶ __)"

"video service" under the CVCL by permitting their customers to stream content using an "internet-connected device" that receives signals through "wireline facilities" operated by third-party "internet service providers." *Id.* ¶¶ 2, 35–39. It sought a declaration that the Streaming Companies "have failed to comply with [the CVCL] as they have failed to obtain a State-issued authorization for their video service." *Id.* ¶ 87(c). The City also sought damages arising from the Streaming Companies' alleged failure "to pay Plaintiff and the other Class members the required video service provider fees." *Id.* ¶¶ 87(e), 88, 97.

The City did not support its "video service" allegations with any factual averments that the Streaming Companies "use[d] the public rights-of-way for the installation or construction of facilities for the provision of . . . video service." 220 ILCS 5/21-401(a)(1), 401(e)(2). Nor did the City allege facts establishing that it had adopted any ordinance imposing a video service provider fee, *id.* 5/21-801(b), or that it had conducted an "audit" of "holders" as the predicate for a deficiency action, *id.* 5/21-901(a).

The City asserted three other claims, all of which derive from its CVCL allegations. The City sought trespass damages under the theory that the Streaming Companies unlawfully enter public property "by causing their video content to stream onto servers either inside of or directly connected to an internet service provider, and from there, the internet service provider directly delivers the content

and "App. 75 (Dkt. 206, at __)," respectively. Other citations to the District Court record are to the "Dkt." entry.

through the public rights of way to a customer." App. 33 (Dkt. 167 ¶ 102). It claimed unjust enrichment because the Streaming Companies allegedly "retain[ed] the benefit conferred upon by them by Plaintiff and Class members in the form of the public rights of way." *Id.* ¶ 106. And it sought a monetary penalty because the Streaming Companies allegedly violated a City ordinance restricting the "resale of cable service" without a local government's consent. *Id.* ¶ 117–18, 125–26.

## III.    The District Court dismissed all of the City's claims with prejudice.

The Streaming Companies timely filed motions to dismiss arguing, among other things, that (1) the City lacked a right of action under the CVCL; (2) the Streaming Companies did not provide "video service" under the CVCL; (3) streaming content delivered by ISPs fell within the CVCL's exception for video programming "provided solely as part of, and via, service that enables users to access content, information, electronic mail, or other services offered over the public Internet" (220 ILCS 5/21-201(v)); (4) the Streaming Companies did not "use" the public rights-of-way within the meaning of the CVCL because they did not install or operate equipment in those rights-of-way; (5) the complaint failed to state a claim for trespass; (6) the complaint failed to state a derivative claim for unjust enrichment; and (7) the complaint failed to allege an ordinance violation. Dkt. 172,

173, 174, 176, 178.[4] The District Court[5] granted the motions and dismissed all claims with prejudice. App. 75 (Dkt. 206, at 1–2, 28).

The District Court first held that the City lacked an express right of action to sue the Streaming Companies for their alleged violations of the CVCL. Recognizing that Illinois law authorizes a party to "file suit for violation of a statute only if the statute provides a right of action," *id.* at 7, the District Court concluded that the plain language of the CVCL does not expressly authorize the City's action. Instead, the District Court noted that the CVCL's enforcement provision only "provides an express right of action to the Attorney General." *Id.* at 9–10 (citing 220 ILCS 5/21-1301); *see supra* at 6–7.[6] And the City identified no other provision "expressly authorizing a local government to bring suits like the instant action." App. 75 (Dkt. 206, at 10). The District Court therefore concluded that "the CVCL does not provide an express right of action to Plaintiff to bring this lawsuit." *Id.* at 12. The District Court explained that the General Assembly "knows how" to create a right of action

---

[4] Some of the motions also argued that the City's claims failed under federal law because they are preempted, barred by the Internet Tax Freedom Act, and unconstitutional under the First Amendment and Due Process Clause. Dkt. 172, 174, 176, 178.

[5] Magistrate Judge Mark A. Beatty, acting with all parties' consent. *See* Am. Jurisdictional Statement 10–11 (Mar. 8, 2023).

[6] While the City had relied on language in § 1301(a) providing that "nothing in [the CVCL] shall deprive local units of government of the right to enforce applicable rights and obligations," App. 75 (Dkt. 206, at 9), the District Court agreed with the Streaming Companies that this language "does not affirmatively delegate any sort of power or authority to local units of government when it comes to enforcing the CVCL," *id.* at 9, 11. The City makes no argument on appeal that § 1301(a) authorizes it to press its claims against the Streaming Companies under the CVCL.

"when [it] intends to" do so, but that it did not do so in the CVCL. *Id.* at 9–10 (collecting express rights of action under the CVCL and the contemporaneous Cable and Video Customer Protection Law).

The District Court also found no basis to imply a right of action for local governments under the CVCL because the City failed to satisfy the Illinois Supreme Court's stringent four-part test. *Id.* at 15 (citing *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117 (Ill. 1999)). The City could not show that "implying a private right of action [was] necessary to provide an adequate remedy for statutory violations" because "the CVCL already provides a framework for enforcement" by the Attorney General. *Id.* at 15–16. The City likewise could not show that implying a right of action for local governments would be "consistent with the underlying purpose of the statute" because the CVCL "sought to implement a '*state* authorization process and uniform standards and procedures.'" *Id.* at 15, 17 (emphasis added) (quoting 220 ILCS 5/21-101).[7] The District Court cited seven recent decisions that refused to imply a right of action for local governments suing streaming companies under "similar statutes in other states." *Id.* at 17–18 (collecting authorities). The Eighth and Ninth Circuits have since agreed that local governments lack a right of action, as have the Ohio Supreme Court, the Georgia Court of Appeals, and the Louisiana Court of Appeal. *See infra* at 19–20.

---

[7] These holdings rendered unnecessary an analysis of the other two implied-right-of-action requirements, which examine whether "the plaintiff is a member of the class for whose benefit the statute was enacted" and whether "the plaintiff's injury is one the statute was designed to prevent." *Id.* at 15 (citing *Fisher*, 722 N.E.2d at 1117).

Finally, the District Court held that the City's trespass, unjust enrichment, and ordinance claims also failed. The District Court dismissed the trespass claim because "the complaint fails to allege facts demonstrating that Defendants caused a physical intrusion, or that the purported physical intrusion interfered with Plaintiff's possession of the rights-of-way." App. 75 (Dkt. 206, at 22). It dismissed the unjust enrichment claim because the City conceded that claim was "tied to" the trespass claim. *Id.* at 24–25. And it dismissed the ordinance claim because the City's code called for an administrative adjudication before the "Regulatory Affairs Court" and because the "allegations are insufficient to plausibly suggest that Defendants even violated the ordinance." *Id.* at 26.

Because the District Court concluded that the City lacked a right of action and otherwise failed to state a plausible claim, it did not address the Streaming Companies' additional arguments. *See id.* at 6–7.

## SUMMARY OF THE ARGUMENT

The District Court's dismissal of the City's action is correct, and it is consistent with numerous other trial and appellate court opinions around the country rejecting similar actions against streaming companies. The District Court thoroughly analyzed and faithfully applied the statutory text and the governing right of action framework in dismissing the CVCL claims under Illinois law. It likewise adhered to settled Illinois precedent in rejecting the trespass and unjust enrichment claims. And it correctly identified multiple fatal problems with the ordinance claim. The City's challenges to these holdings do not withstand scrutiny, and this Court should affirm.

*First*, as the District Court correctly concluded, the City lacks an express or implied right of action for its CVCL claims. The City's appeal relies exclusively on § 901 of the CVCL for an express right of action. But the City failed to brief this argument below—and for good reason, because the plain language of § 901 forecloses it. The City also argues for an implied right of action, insisting the statute could not operate without one. But the CVCL vests broad enforcement powers in the Attorney General and expressly preserves all other powers afforded to the State's chief legal officer. Implying a right of action for local governments would conflict with the statute's allocation of enforcement power to the State and contradict the statute's purpose of creating a centralized framework to address a matter of statewide concern. While the City complains that denying a right of action would leave it "powerless" to sue, that is true in every case where the plaintiff seeks an implied right of action. And here, it is the result the legislature clearly intended. The District Court therefore properly held that the City could not meet its high burden to establish that a right of action should be implied under Illinois law. Moreover, the District Court's refusal to grant the City an implied right of action under the CVCL is consistent with twelve recent decisions denying local governments a right of action against streaming companies under similar statutes—including five federal and state appellate decisions entered since the District Court's ruling.

*Second*, the City has failed to plausibly allege trespass and unjust enrichment. The City contends that the Streaming Companies trespass on its land

by interconnecting with ISPs' network facilities, and by arranging for *ISPs* to deliver the Streaming Companies' digital content to customers over the *ISPs'* wirelines. This conduct is not a trespass under Illinois law because it is authorized, does not cause a tangible invasion of the public rights-of-way, and does not interfere with or subtract from the City's use of its property. Because the trespass claim fails, the unjust enrichment claim must fail too. As the District Court held and the City concedes, the two claims "stand or fall" together. City Br. 24.

*Third*, the City has failed to plausibly allege a civil claim for violation of its cable resale ordinance. Procedurally, the ordinance may only be enforced in an administrative proceeding before the Regulatory Affairs Court or in a criminal proceeding under the rules of criminal procedure—not in a civil proceeding like this case. Substantively, the cable resale ordinance does not plausibly apply to the Streaming Companies' alleged conduct in making content available for streaming over the facilities of ISPs. The District Court correctly recognized both fatal deficiencies.

This Court should affirm the District Court's decision.

## ARGUMENT

## I.     Standard of review

This Court reviews a dismissal order de novo. *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019). Dismissal is appropriate where "the allegations in the complaint [fail to] plausibly suggest a right to relief . . . above a speculative level," including where the plaintiff lacks an applicable right of action. *Id.* at 278–80

(quotation marks omitted) (affirming dismissal of statutory claim where plaintiff lacked express right of action and could not satisfy Illinois test to imply one).

## II. The District Court correctly dismissed the City's claims under the CVCL.

The City concedes that its CVCL claims survive "only if the statute provides a right of action." City Br. 14; *accord Medicos Pain & Surgical Specialists, S.C. v. Travelers Indem. Co. of Am.*, 103 N.E.3d 965, 972 (Ill. App. 1 Dist. 2018). The District Court correctly found no express right of action because the CVCL does not expressly authorize the City's claims. The District Court then correctly found no implied right of action because the City failed to satisfy the controlling four-part test under Illinois law. The City's limited arguments to the contrary conflict with the statutory text and controlling law.

### A. The City lacks an express right of action for the Streaming Companies' alleged statutory violations.

The City alleges that the Streaming Companies violated the CVCL by failing to (1) "obtain a State-issued authorization for their video service" under § 301; (2) "provide at least 10 days-notice" of their intent to offer video service under § 801; and (3) "pay . . . the required video service provider fees" under § 801. App. 33 (Dkt. 167 ¶¶ 83–85, 87(c)–(e), 94–95). None of those sections expressly authorizes actions filed by local governments. *See* 220 ILCS 5/21-301, 5/21-801. So the City instead attempts to invoke "an express right of action to audit and file suit against a [state authorization] holder" under § 901. City Br. 12–15 (citing 220 ILCS 5/21-901). This argument fails for at least two reasons.

*First*, the City forfeited any reliance on § 901 by not briefing it below. This Court has long held that appellants forfeit arguments that they do not "develop[] . . . in the district court." *Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020) (citing *Scheidler v. Indiana*, 914 F.3d 535, 540, 544 (7th Cir. 2019)). The City did not cite § 901 a single time in its 62-page opposition to the Streaming Companies' motions to dismiss, focusing instead on an argument under § 1301 that it has failed to renew on appeal. *See* Dkt. 184, at 39–40; *supra* at 10 n.6.[8] Because the District Court was not asked to address § 901, this Court "cannot consider" it either. *Hildreth*, 960 F.3d at 429.

*Second*, the City's forfeited argument lacks merit. Section 901 permits a local government to "audit" a state authorization "holder" for underpaid video service provider fees in accordance with "Section 11-42-11.05 of the Illinois Municipal Code." 220 ILCS 5/21-901(a)–(b). Section 11-42-11.05, in turn, authorizes a "legal proceeding to collect a deficiency" from a "holder" under the CVCL if: (1) "an audit by the municipality" of a holder reveals an underpayment by the holder; (2) the municipality notifies the holder "within 90 days after . . . discover[ing] the error"; and (3) "the parties are unable to agree on the disposition of the audit findings" after "180 days [from] the municipality's notification of the error." 65 ILCS 5/11-42-11.05(d), (g).

---

[8] The City's failure to argue in its opening brief for a right of action under § 1301 amounts to a forfeiture of that meritless argument, too. *See Wedemeyer v. CSX Transp., Inc.*, 850 F.3d 889, 897 (7th Cir. 2017).

The City has never alleged that it audited the Streaming Companies or provided the requisite pre-suit notice, nor could it. *See generally* App. 33 (Dkt. 167). More fundamentally, the City expressly alleged—and the District Court recognized—that the Streaming Companies are *not* "holders" under the CVCL.[9] *See id.* ¶ 83 (alleging "Defendants have failed to . . . obtain a State-issued authorization for their video service"). The express right of action provided by § 901 therefore does not apply at all. The City concedes this point, acknowledging that "[t]he question here is not whether the City can sue a holder, but whether the City can sue the Streaming Companies who have . . . never applied [for], nor received, holder certificates from the Illinois Commerce Commission." City Br. 12. As the District Court explained, the CVCL's plain text does not "contemplate suits" by local governments against "non-holders." App. 75 (Dkt. 206, at 12).

Because neither § 901 nor any other provision of the CVCL "expressly authoriz[es] a local government to bring suits like the instant action," the District Court correctly held that "the CVCL does not provide an express right of action to Plaintiff to bring this lawsuit." App. 75 (Dkt. 206, at 10–12).[10]

---

[9] The City offers no explanation for how it could transform an audit and deficiency collection mechanism into a right to affirmatively sue streaming companies to become holders.

[10] The fact that the City "sought . . . a declaration" under the Declaratory Judgment Act does not change the result. City Br. 14. As this Court and others have observed, "[d]eclaratory relief 'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action." *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). The Ninth Circuit recently collected cases from the Second, Third, Fifth, Sixth, Tenth, and D.C. Circuits for the same proposition in dismissing a city's declaratory judgment claims against streaming

### B.    The City lacks an implied right of action.

Absent an express right of action, the City bears the heavy burden of establishing that a right of action should be implied under Illinois law. As the Illinois Supreme Court recently explained, "[t]he standard that must be met for a court to imply a private right of action in a statute is quite high." *Channon v. Westward Mgmt., Inc.*, --- N.E.3d ----, 2022 IL 128040 ¶ 33. Implying a right of action that the legislature declined to provide in the statutory text is an "extraordinary step," appropriate "only when it is clearly needed to advance the statutory purpose and when the statute would 'be ineffective, as a practical matter, unless a private right of action were implied.'" *Id.* (quoting *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999)).

To overcome Illinois's strong presumption against implied rights of action, the City must satisfy a four-part test. The City must establish that: (1) it "is within the class of members the statute was enacted to benefit"; (2) its injury "is one the statute was designed to prevent"; (3) "a private right of action is consistent with the underlying purpose of the statute"; and (4) "inferring a private right of action is necessary to provide an adequate remedy for statutory violations." *Horist*, 941 F.3d at 278 (citing *Fisher*, 722 N.E.2d at 1117). "All four factors must be met before a court will recognize an implied remedy." *Id.* Here, the City has established none.

---

companies under a similar state statute. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022) (holding city could not enforce Nevada's video service statute where it "lack[ed] an independent cause of action" under that statute).

### 1.   An implied right of action is not necessary to provide an adequate remedy for CVCL violations.

The District Court observed that "[t]he Illinois Supreme Court has 'implied a private right of action under a statute only in cases where the statute would be ineffective'" without one. App. 75 (Dkt. 206, at 15) (quoting *Fisher*, 722 N.E.2d at 1119–20); *accord Channon*, 2022 IL 128040 ¶ 31 (refusing to imply a right of action absent a "clear need" (quoting *Abbasi*, 718 N.E.2d at 185)). The District Court then held that implying a right of action for local governments under the CVCL "is not necessary" because "the CVCL already provides a framework for enforcement" via the Attorney General, who has "the authority to investigate, penalize, and remedy violations of the CVCL." App. 75 (Dkt. 206, at 15).

The District Court's holding tracks the statutory text. *See* 220 ILCS 5/21-1301(a) (providing that "[t]he Attorney General is responsible for administering" the CVCL). And it accords with a wave of appellate and trial court decisions in other states refusing to imply a right of action for local governments under similar video service statutes that likewise vest enforcement authority in state entities. The District Court collected seven such decisions. *See* App. 75 (Dkt. 206, at 17–18).[11]

---

[11] Citing *City of Reno v. Netflix, Inc.*, 558 F. Supp. 3d 991, 997–1000 (D. Nev. 2021); *City of Ashdown v. Netflix, Inc.*, 565 F. Supp. 3d 1111, 1116–17 (W.D. Ark. 2021); *City of New Boston v. Netflix, Inc.*, 565 F. Supp. 3d 865, 869–70 (E.D. Tex. 2021); *City of Lancaster v. Netflix*, No. 21STCV01881, 2021 WL 4470939, at *2–5 (Cal. Super. Ct. Sept. 20, 2021), *final order*, 2022 WL 1744233 (Apr. 13, 2022), *appeal filed*, No. B321481 (Cal. Ct. App., 2d Dist. June 1, 2022); *Gwinnett County v. Netflix, Inc.*, No. 20-A-07909-10, 2022 WL 678784, at *3 (Ga. Super. Ct. Feb. 18, 2022); *Borough of Longport v. Netflix, Inc.*, No. 21-15303 (SRC) (MAH), 2022 WL 1617740, at *2–3 (D.N.J. May 20, 2022), *appeal filed*, No. 22-2139 (3d Cir. June 23, 2022);

Five appellate courts have likewise denied local governments a right of action since the City filed this appeal (with the most recent appellate decision entered the day before the submission of this brief).[12] And two other courts have rejected similar claims after finding that comparable video service statutes do not apply to streaming content.[13]

---

*City of Kenner v. Netflix, Inc.*, No. 814-168, 2022 WL 4101746 (La. Dist. Ct., 24th Dist. Aug. 25, 2022).

[12] *See City of Ashdown v. Netflix, Inc.*, 52 F.4th 1025, 1028 (8th Cir. 2022) (affirming rejection of implied right of action under Arkansas video service statute that gave "the Public Service Commission . . . the right and duty to bring suit to enforce" the statute); *City of Reno*, 52 F.4th at 878 (affirming rejection of implied right of action under Nevada video service statute that "provi[ded] for enforcement by the Nevada Attorney General and the Consumer's Advocate in the Office of the Attorney General"); *City of Kenner v. Netflix, Inc.*, No. 22-CA-466, --- So. 3d ----, 2023 WL 3216197, at *3–5 (La. Ct. App., 5th Cir. May 3, 2023) (denying right of action under Louisiana video service statute that vested franchising authority in the Secretary of State); *Gwinnett County v. Netflix, Inc.*, No. A22A1172, --- S.E.2d ----, 2023 WL 2398217, at *5 (Ga. Ct. App. Mar. 8, 2023) (affirming rejection of implied right of action under Georgia video service statute where Attorney General could "prosecute civil recovery actions in the name of the state"), *pet. for cert. filed*, No. S23C0768 (Ga. Mar. 28, 2023); *City of Maple Heights v. Netflix, Inc.*, --- N.E.3d ----, 2022-Ohio-4174 ¶ 25 (Nov. 30, 2022) (denying implied right of action under Ohio video service statute that permitted the "Ohio Department of Commerce" to "investigate alleged violations of the Act"). While the City cites a Missouri trial court decision allowing municipal claims to proceed past the motion to dismiss stage, that decision did not directly address whether the local government plaintiff had a right of action. *See City of Creve Coeur v. Netflix, Inc.*, No. 18SL-CC02819, 2020 WL 13120428 (Mo. Cir. Ct. Dec. 30, 2020).

[13] *See, e.g.*, *City of Knoxville v. Netflix, Inc.*, 656 S.W.3d 106, 111–16 (Tenn. 2022); *City of Fort Scott v. Netflix, Inc.*, No. BB-2021-CV-000166, 2022 WL 16901200, at *2–3 (Kan. Dist. Ct., Bourbon Cnty. Oct. 10, 2022), *appeal filed*, No. 125784 (Kan. App. Nov. 22, 2022). Many of the decisions holding that the local governments lacked a right of action also ruled in the alternative that the streaming companies did not provide video service covered by the analogous state statutes, including because streaming content fell within the state statutes' public internet exceptions tracking the language of 220 ILCS 5/21-201(v). *See, e.g.*, *City of Ashdown*, 565 F. Supp. 3d at 1115–16; *City of Reno*, 558 F. Supp. 3d at 996–97; *Gwinnett County*, 2022 WL 678784, at *6–7; *City of Lancaster*, 2022 WL 1744233, at *8–9; *see also*

While the City responds that having to rely on the Attorney General's enforcement power "would leave every city entirely powerless" to enforce the CVCL, City Br. 16, that reasoning would apply any time a court denies an implied right of action based on an existing enforcement mechanism. The Illinois Supreme Court has made clear that no right of action should be implied in such circumstances. *See Horist*, 941 F.3d at 278; *Channon*, 2022 IL 128040 ¶ 33. Nor does denying the City an implied right of action deprive local governments of the ability to collect video service provider fees from the facilities-based entities that the legislature intended to regulate and that hold State authorization. City Br. 16. Rather, the statute simply "demarcates the line of [enforcement] authority between municipalities and the state." *City of New Boston*, 565 F. Supp. 3d at 869. Local governments may file a post-audit deficiency action against "[a] holder that has received State-issued authorization" to provide video service and that has underpaid "the holder's service provider fee." 220 ILCS 5/21-901(a). But the legislature sensibly made it the State's prerogative to administer the CVCL and to enforce the threshold obligation to obtain State-issued authorizations where it applies (thereby triggering derivative obligations such as the payment of video service provider fees). *See infra* at 25–26.

The City also contends that "the limited bandwidth of the Attorney General's staff" means local governments should not "be entirely reliant upon a third-party." City Br. 17. These concerns—which apply to any statute that vests enforcement in a

---

*Gwinnett County*, 2023 WL 2398217, at *9–10 (McFadden, J., concurring fully and specially).

state official rather than local governments—find no support in either the record or Illinois law. As the District Court explained, "the simple fact that the Attorney General has not pursued a lawsuit against video streaming platforms for purported violations of the CVCL does not somehow mean the statutory enforcement framework is an inadequate remedy." App. 75 (Dkt. 206, at 16). Indeed, the City concedes that the "applicable question" in determining whether to imply a private right of action "is whether the statute provides for a sufficient remedy, not whether a particular person or entity has, in fact, been sanctioned under the statute." City Br. 18–19 (quoting *Carmichael v. Prof'l Trans., Inc.*, --- N.E.3d ----, 2021 IL App (1st) 201386 ¶ 33); *see also Lyons v. Ryan*, 780 N.E.2d 1098, 1104–05 (Ill. 2002) (noting that the Attorney General "is afforded a broad range of discretion in the performance of public duties" and that the "exercise of this discretion is a necessary and proper function of [the] office").

Finally, the City asserts that the existing enforcement mechanism is inadequate because the Attorney General lacks the ability to enforce the statutory scheme against entities that choose not to apply for authorization, and thus are not "holders" within the meaning of the CVCL. City Br. 2, 10, 15. But the same provision that designates the Attorney General as the person "responsible for administering" the statute also specifies that "[n]othing in this Section shall limit or affect the powers of the Attorney General to enforce the provisions of this Article." 220 ILCS 5/21-1301(a), (e)(4). The CVCL thus preserves the Attorney General's broad enforcement powers. *See* ILL. CONST. 1970 art. V, § 15 (providing that "[t]he

Attorney General shall be the legal officer of the State"); 15 ILCS 205/4
(empowering the Attorney General to "investigate alleged violations of the statutes
which the Attorney General has a duty to enforce" and to "institute and prosecute
all actions and proceedings in favor of or for the use of the State"); *see also People ex
rel. Barrett v. Finnegan*, 38 N.E.2d 715, 717 (Ill. 1941) (holding the Attorney
General "may institute, conduct and maintain all such suits and proceedings as he
deems necessary for the enforcement of the laws of the State"); *Perry v. Village of
Arlington Heights*, 977 F. Supp. 896, 898–99 (N.D. Ill. 1997) (citing *Finnegan* for the
proposition that the Attorney General "[u]ndoubtedly" has "the power and duty to
enforce state law").

The City ignores this statutory language and the Attorney General's broad
powers, fixating instead on the District Court's observation that "[n]o provision of
the CVCL expressly authorizes . . . the Attorney General [or] a local government . . .
to bring suit against a 'non-holder.'" App. 75 (Dkt. 206, at 11–12). But this
statement does not purport to negate the Attorney General's preexisting
enforcement powers to investigate and prosecute all statutory violations—powers
that the CVCL expressly preserves. *See* 220 ILCS 5/21-1301(e)(4); *supra* at 22.
While the absence of "a private right of action . . . authorized by the [CVCL]" dooms
the *City's* claims, *Medicos*, 103 N.E.3d at 972, other sources give the Attorney
General undisputed authority to "investigate alleged violations" of the CVCL and to
"institute and prosecute" an action to enforce it. 15 ILCS 205/4; *Finnegan*, 38
N.E.2d at 717; *People ex rel. Devine v. Time Consumer Mktg., Inc.*, 782 N.E.2d 761,

765–67 (Ill. App. 1 Dist. 2002) (reviewing the Attorney General's expansive statutory and common law powers, including all implied "powers necessary to exercise those powers expressly stated").

Indeed, the District Court recognized the Attorney General's "authority to enforce the state-wide authorization process" as "the state's chief legal officer." App. 75 (Dkt. 206, at 17) (emphasis omitted). It also referenced the Attorney General's ability to "pursue[] a lawsuit against video streaming platforms for purported violations of the CVCL." *Id.* at 16. These conclusions align with other decisions examining the overarching role of state attorneys general in enforcing similar statutory schemes. *See, e.g.*, *Gwinnett County*, 2023 WL 2398217, at *5 (denying implied right of action under Georgia video service statute where separate statute authorized the Georgia Attorney General to "file and prosecute civil recovery actions in the name of the state against any person . . . which violates any statute while dealing with the state"); *City of New Boston*, 565 F. Supp. 3d at 869–70 (denying implied right of action under Texas video service statute where separate statute authorized the Texas Attorney General to investigate any alleged violation of Texas Utilities Code). And these decisions further support the District Court's holding that "[i]mplying a private right of action for local governments is not necessary to provide an adequate remedy" for the statutory violations alleged by the City. App. 75 (Dkt. 206, at 15).

### 2. An implied right of action is inconsistent with the CVCL's purpose.

The District Court's separate holding that implying a right of action for the City would be "[in]consistent with the underlying purpose of the CVCL" provides an additional and independent reason to dismiss the City's CVCL claims. *Id.* at 16–17; *see Horist*, 941 F.3d at 278. The statute creates a "State authorization process and uniform standards and procedures" to "enable rapid and widespread entry by competitive providers," "bring to Illinois consumers the benefits of video competition," and "best ensure equal treatment and parity among providers and technologies." 220 ILCS 5/21-101(f)–(g). The centralized process effecting these purposes could not function if local governments were free to press the implied right of action the City demands.

As the District Court explained, "centraliz[ing] authority" in the Attorney General "to enforce the *state-wide authorization* process administered by a *state* agency" makes "good sense" because the Attorney General, "the *state's* chief legal officer," can "ensure enforcement decisions serve[] the interests of all Illinois consumers." App. 75 (Dkt. 206, at 17). But "leav[ing] enforcement decisions to the whims of any and all of the more than a thousand municipalities" in the state "does *not* make sense" because it would disrupt the statutory scheme and create the potential for inconsistent administration and interpretations of the statute by a multitude of enforcers. *Id.* Numerous courts have relied on similar reasoning to deny local governments an implied right of action to sue streaming companies for alleged violations of similar video service statutes. *See, e.g., City of Ashdown*, 52

F.4th at 1028 (noting that statutory purpose "to create uniformity across the state would be undermined if individual municipalities possessed authority to bring enforcement suits independently of the state body charged with enforcement"); *City of Reno*, 52 F.4th at 876, 878 (concluding that purposes of legislative scheme "weigh[ed] strongly against implying a private right of action" under Nevada statute that was "intended to promote more competition in the market for [video] service").

The City counters that it "simply seeks the payment of fees," unlike other municipal actions requesting "that [streaming] companies cure their noncompliance or stop providing services whatsoever." City Br. 17–18. But the City plainly seeks more than just fees. The complaint claims a "right to enforce applicable rights and obligations" under the CVCL, "including the Defendants' obligation to apply for and receive a video service authorization." App. 33 (Dkt. 167 ¶ 29). The first page of the City's opposition to the Streaming Companies' motions to dismiss informed the District Court that the City "seeks to . . . secure ongoing compliance." Dkt. 184, at 15. And the first sentence of the City's statement of the case on appeal describes this action as "seeking a declaration and statutory damages that the Streaming [Companies] violated the [CVCL] by providing video service . . . without either state or local authority." City Br. 3; *accord* App. 33 (Dkt. 167 ¶ 87). No other set of allegations would make sense, as the CVCL imposes video service fees only on entities providing "video service" that have "obtained a State-issued authorization." 220 ILCS 5/21-401(a)(1), 801(b) ("[*T*]*he holder* [of a State authorization] shall be

liable for and pay the service provider fee . . . ." (emphasis added)). Granting the City's requested ruling that the Streaming Companies must obtain State authorization would also trigger a number of separate obligations—further undermining the City's contention that it only seeks fees.[14] The District Court correctly rejected the City's attempt to bypass the Attorney General and enforce the authorization requirement itself.

The City nevertheless maintains that implying a right of action for local governments would comport with a "plain reading of the CVCL" and "legislative intent." City Br. 16. But the limited authorities the City cites do not support that proposition. *See id.* at 16–17 (citing 220 ILCS 5/21-901(a); *id.* 5/21-1001; IL S. Tran. 2007 Reg. Sess. No. 57). As shown, § 901 provides an inapplicable and limited right of action permitting local governments to audit "holders." *See* 220 ILCS 5/21-901(a)–(b); *supra* at 16–17. Section 1001 allows a local government to impose reasonable terms on equipment in the public rights-of-way, but similarly applies only to "holders." *See* 220 ILCS 5/21-1001(a). And the state senator quoted by the City simply referred to concerns in 2007 about municipalities "losing revenue from the cable companies" with the adoption of a statewide regulatory regime. City Br. 16.

---

[14] *See, e.g.*, 220 ILCS 5/21-1001(a) (requiring authorization holders to meet "applicable construction and technical standards and right-of-way occupancy standards"); *id.* 5/21-1001(f)(9) (requiring holders to provide "information describing the location of the cable service or video service facilities and equipment located in the unit of local government's rights-of-way" upon request); *id.* 5/22-501(f) (requiring holders to provide "free service line drop[s]" to "all current and future public buildings" over which video service systems pass). None of these obligations plausibly applies to over-the-top streaming services that do not own or operate any facilities in the public rights-of-way. *See supra* at 5–6.

He did not mention losing revenue because of "streaming companies" (or any other non-facilities-based entities), and he certainly did not discuss who should enforce the initial obligation to secure state authorization. The CVCL leaves such enforcement to the State, and the District Court correctly held that permitting local governments to exercise parallel enforcement authority would "*not* make sense." App. 75 (Dkt. 206, at 17).

Finally, the CVCL's creation of several other express rights of action underscores that the legislature intentionally omitted a right for local governments to pursue actions of this kind. As the Illinois Supreme Court explained, "[w]here a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions." *Metzger v. DaRosa*, 805 N.E.2d 1165, 1172 (Ill. 2004) (applying the "familiar maxim *expressio unius est exclusio alterius*"). Or as the District Court similarly explained, the General Assembly "knows how" to "create a right of action" when it so intends. App. 75 (Dkt. 206, at 9). It follows that, where "the legislature has expressly provided a private right of action in a specific section of the statute," the legislature "did not intend to imply private rights of action to enforce other sections of the same statute." *Metzger*, 805 N.E.2d at 1172.

That rule applies with full force here. The CVCL creates multiple express rights of action for local governments, but it does not authorize local governments to sue non-holders like the Streaming Companies. *See* 220 ILCS 5/21-401(f) (permitting local governments to "bar a transfer of ownership by filing suit in a court of competent jurisdiction"); *id.* 5/21-901(a) (permitting local governments to

- 28 -

"audit" authorization "holders" in "determining any overpayment or underpayment of the holder's service provider fee"); *cf. id.* 5/22-501(r) (permitting local governments to "enforce all of the customer service and privacy protection standards" in contemporaneous cable and video service statute); *supra* at 6–7, 16–17. Implying a cause of action for the City would thus subvert the legislature's intent to omit one.

### 3. The City cannot satisfy the remaining implied right of action factors.

Although the District Court correctly recognized that the CVCL's purpose and enforcement framework are "dispositive of the issue," App. 75 (Dkt. 206, at 15), the City also fails to satisfy the other two necessary criteria for implying a right of action under Illinois law.

*First*, the City does not fall within "the class for whose benefit the statute was enacted." *Horist*, 941 F.3d at 278. The Illinois Supreme Court recently clarified that plaintiffs satisfy this factor only when "the legislature intended to *primarily* benefit" them, not when the benefits they receive are "merely incidental." *Channon*, 2022 IL 128040 ¶¶ 22–23, 27. The CVCL specifically identifies consumers rather than local governments as the primary beneficiaries. *See* 220 ILCS 5/21-101(f) (explaining that "[t]he State authorization process and uniform standards and procedures in this Article are intended to enable rapid and widespread entry by competitive providers, which will bring to Illinois consumers the benefits of video competition"); *id.* 5/21-101(e) (describing "[t]he provision of competitive cable services and video services" as "a matter of statewide concern that extends beyond

the boundaries of individual local units of government"); *id.* 5/21-101(a)–(b), (g) (noting CVCL "is intended to best ensure equal treatment and parity among providers and technologies," to improve "[t]he economy in the State of Illinois," and to "bring important daily benefits to Illinois consumers").

In fact, by permitting facilities-based cable and video service providers to obtain authorization directly from the State instead of negotiating with individual municipalities, the CVCL *limits* the authority that local governments previously enjoyed. *See, e.g.*, *id.* 5/21-301(c)(1) (specifying how "[a]n incumbent cable operator may elect to terminate its agreement with the local franchising authority and obtain a State-issued authorization"); *id.* 5/21-301(d) (designating Illinois Commerce Commission as "the franchising authority for cable service or video service providers that apply for and obtain a State-issued authorization under this Article").

The City ignores these provisions and focuses instead on the revenue available to local governments via the payment of service provider fees under the CVCL. City Br. 13. But local governments already had the authority to collect these same types of fees under the municipal franchising regime that existed *before the CVCL was enacted*. *See* 220 ILCS 5/21-101(g), 301(b)–(c), 801(b) (referencing franchise agreements and fee arrangements predating the CVCL); *see also* 47 U.S.C. § 542 (expressly authorizing local franchising authorities to collect franchise fees up to 5% of gross revenues from cable operators); *id.* § 572(a)(1), (c)(2)(B) (same for telephone companies that provide video services). As the Ninth Circuit explained in rejecting a similar argument for an implied right of action, "[t]he right to collect

franchise fees predates [Nevada's video service statute], so it is not clear that the Legislature intended to confer a right on local governments as a class." *City of Reno*, 52 F.4th at 878 (quotation marks omitted).[15] The same reasoning applies here. Rather than expanding local rights, the CVCL reduced municipal franchising authority in favor of a simplified statewide authorization process that would increase video service competition. *See* 220 ILCS 5/21-101(f). The fact that the statute preserved local authority to collect franchise fees from facilities-based cable and telephone companies does not create the right of action the City seeks.

*Second*, the City's alleged injury "is [not] one the statute was designed to prevent." *Horist*, 941 F.3d at 278. This Court has recognized that the "benefit" and "injury" factors overlap because a plaintiff outside the class of intended beneficiaries generally cannot establish an injury the legislature intended to prevent. *See id.* at 279 (holding condominium sellers had not "suffered an injury that the statute was designed to prevent" because the legislature enacted the statute "to protect the interests of condominium *purchasers*"). While the City contends that the Streaming Companies have "provid[ed] video service to Illinois residents through the public rights of ways without either state or local authority," City Br. 3, the legislature created the authorization requirement to benefit consumers and the State. *See* 220 ILCS 5/21-101(a)–(f); *supra* at 29–30. The legislature vested enforcement authority in the Attorney General for precisely that reason, and the CVCL leaves no room for

---

[15] *See also City of Ashdown*, 52 F.4th at 1028 (rejecting argument that city was "part of a special class" entitled to implied right of action despite fact that it was "owed fees and ha[d] other rights" under Arkansas video service statute).

local governments to circumvent that authority and police alleged authorization violations on the side.

Consistent with the statutory text, Illinois precedent, and a host of other decisions rejecting similar actions brought by local governments against streaming companies, this Court should affirm the District Court's holding that the City lacks an implied right of action to sue under the CVCL.

## III. The District Court correctly dismissed the City's trespass claim and derivative unjust enrichment claim.

Although the City also asserted trespass and unjust enrichment claims based on the same allegations as its CVCL claims, the District Court properly held that the City failed to allege multiple elements necessary to state a trespass claim and therefore also failed to state a derivative unjust enrichment claim.

### A.     The City cannot state a trespass claim.

The City cannot state a trespass claim under Illinois law unless it plausibly alleges that the Streaming Companies tangibly invaded City property without its permission and in a way that interfered with its possessory rights. *See Schweihs v. Chase Home Fin. LLC*, 187 N.E.3d 1196, 1207 (Ill. App. 1 Dist. 2021); *Loftus v. Mingo*, 511 N.E.2d 203, 210 (Ill. App. 4 Dist. 1987). As the District Court correctly held, the City cannot make that showing here. The City concedes in the complaint that the Streaming Companies "have not and do not install, operate, or maintain any physical infrastructure in the public rights-of-way." App. 75 (Dkt. 206, at 19). That concession is fatal to the trespass claim, and the City's arguments to the contrary are unavailing.

The City posits that a trespass somehow results when the Streaming Companies interconnect with "private network facilities" owned and operated by ISPs, and these ISPs deliver the Streaming Companies' content "to subscriber connections through wireline facilities located in the public right of way." City Br. 21; *see also* App. 33 (Dkt. 167 ¶ 102). This round-about theory of physical invasion fails on its own terms: To establish a trespass under Illinois law, the conduct at issue must be unauthorized and tangibly interfere with and subtract from the City's land, *see Schweihs*, 187 N.E.3d at 1207, and the City cannot satisfy any of these prerequisites for liability.

### 1.    The City cannot allege unauthorized entry.

To be liable for trespass, a defendant must enter onto land without authorization. *Schweihs*, 187 N.E.3d at 1207 ("A defendant commits the tort of trespass by entering onto a plaintiff's land without permission, invitation, or other right."). On the issue of unauthorized entry, the City makes three critical concessions in its complaint and before this Court.

First, the City concedes that it is the ISPs—*not* the Streaming Companies—that "construct, install, and/or operate the physical infrastructure . . . in the public rights-of-way." City Br. 21–22; *see also* App. 33 (Dkt. 167 ¶ 60) (Streaming Companies are not "require[d]" to "construct, own, or operate" their own wireline facilities because their subscribers receive streaming content through the ISPs' "fiber optic cable."). Second, the City admits that it is the ISPs—*not* the Streaming Companies—that "delive[r] the content through the public rights of way" to customers. App. 33 (Dkt. 167 ¶ 102); *see also id.* ¶ 47. Third, the City recognizes

that the ISPs lawfully maintain and operate wirelines and facilities in the public rights-of-way because they are the ones that pay the requisite service provider fees. App. 33 (Dkt. 167 ¶¶ 63, 123); City Br. 6, 10, 19; *see also* App. 75 (Dkt. 206, at 20). Together, these allegations make clear that the ISPs—*not* the Streaming Companies—are the entities that physically enter onto public property, and they are presently authorized to do so.

The City cannot allege that the Streaming Companies trespass on public land. The Streaming Companies neither own nor operate the wirelines inside the public rights-of-way. They do not even transmit their digital content across those wirelines—the ISPs do. As both this Court and the Illinois Supreme Court have held, arranging for such transmission does not constitute "use" of the wirelines. *See City of Chicago v. FCC*, 199 F.3d 424, 432–33 (7th Cir. 1999) (holding that a cable provider did not "use" the public right-of-way by paying a third party to transmit video signals across third party's fiber-optic and coaxial cables); *Primeco Personal Commc'ns, L.P. v. ICC*, 750 N.E.2d 202, 216–17 (Ill. 2001) (holding that a wireless provider did not "use" or "access" the public right-of-way by transmitting its signals across a third party's cable and wires pursuant to interconnection and leasing agreements).[16]

---

[16] The City attempts to distinguish *City of Chicago* on the ground that it "involved the *satellite broadcast* . . . of video using equipment solely on private property." City Br. 22. But nothing in the Court's holding depended on the fact that the provider used satellites. *See* 199 F.3d at 427. Instead, the Court based its decision on the fact that the provider was not the entity that constructed or maintained the cables within the public rights-of-way. *Id.* at 432–33.

Nor can the City allege that the Streaming Companies' interconnection with the ISPs' "private network facilities" constitutes a trespass. City Br. 21. Even assuming *arguendo* that those alleged "private" facilities (and not the wirelines that run from them) are on public property (which the City does not clearly claim),[17] the City appears to concede that the ISPs freely invited the Streaming Companies to connect their servers to the ISPs' "private network facilities." *See, e.g.*, App. 33 (Dkt. 167 ¶¶ 43–44, 63). Under well-established Illinois law, a landlord (here, the City) cannot sue the guests (the Streaming Companies) of a tenant (the ISPs) for trespass. *See City of Quincy v. Daniels*, 615 N.E.2d 839, 842 (Ill. App. 4 Dist. 1993) ("[A] person on leased premises at the express invitation of the tenant is not a trespasser as a matter of law."); *Karow v. Student Inns, Inc.*, 357 N.E.2d 682, 687 (Ill. App. 4 Dist. 1976) (same).[18] Nor has the City alleged, in its complaint, in briefing below, or in this Court, that the ISPs would have exceeded the scope of their authorization by inviting the Streaming Companies to connect their servers to the ISPs' "private network facilities."

Because the conduct the City alleges as a physical invasion would (if it even occurred) have been authorized by the ISPs, its trespass claim fails. *See Caldwell v.*

---

[17] *See, e.g.*, App. 33 (Dkt. 167 ¶¶ 35, 40, 44, 47, 55–58, 64–68, 102, 114).

[18] For the same reason, the City's reliance on *Peeler v. MCI, Inc.*, 447 F.3d 992 (7th Cir. 2006) (per curiam), is misplaced. *See* City Br. 21. In that case, the defendant installed a fiber-optic cable and a "fiber box" on land in which the plaintiff claimed an ownership interest, without any invitation from the plaintiff (or a tenant). 447 F.3d at 993. Here, the complaint does not allege that the Streaming Companies have installed anything in the public rights-of-way, and any interconnection to the ISPs' networks was at the ISPs' invitation or with their consent.

*City of Chicago*, No. 08 C 710, 2010 WL 2722207, at *5 (N.D. Ill. July 8, 2010)
(granting judgment as a matter of law on Illinois trespass claim because defendant's
entry "was authorized").

### 2. The City cannot allege tangible intrusion on public property.

The City's trespass claim fails for another reason: Illinois courts require a
plaintiff to show that something *tangible*, such as a person or an object, has entered
its land. *See In re Chi. Flood Litig.*, 680 N.E.2d 265, 278 (Ill. 1997) (noting that
trespass involves a "physical invasion"); *Chi. & W.I.R. Co. v. Ayres*, 106 Ill. 511, 518
(1883) (describing trespass as "an actual physical invasion of the owner's real
estate"); *see also* 75 Am. Jur. 2d Trespass § 29 (2018) ("The traditional common law
rule . . . provides that a trespass only exists where the invasion of land occurs
through a physical, tangible object . . . .").[19] Even assuming that the Streaming
Companies, rather than the ISPs, transmit digital content across public land, such
content "has no physical presence," as the District Court rightly determined. App.
75 (Dkt. 206, at 22).

---

[19] The District Court noted that courts in a handful of states have adopted a
"modern view" of trespass that allows plaintiffs to recover for intangible invasions,
but only where the plaintiff proves "physical damage to the property." App. 75 (Dkt.
206, at 21 n.11) (quotation marks omitted). The City has not identified a single case
from Illinois adopting this approach, and even if it had, the District Court correctly
explained that the City "has not alleged the transmission of Defendants' video
content caused substantial damage to its property." *Id.* Nor could the City plausibly
do so. *See infra* at 38–39; *In re MCI, Inc.*, No. 02-13533 (AJG), 2006 WL 538556, at
*4 (Bankr. S.D.N.Y. Feb. 1, 2006).

The City offers two unpersuasive challenges to the District Court's conclusion. *First*, it notes that digital content "can be purchased," "downloaded," and "tak[e] up space on a computer or hard drive." City Br. 23. But it does not follow that digital content passing over public rights-of-way in the form of electromagnetic pulses can cause the type of physical intrusion that the tort of trespass is designed to address. *See In re MCI, Inc.*, 2006 WL 538556, at *4–5 (rejecting the argument that "harmless" "pulses of light" flowing through a fiber-optic cable constituted a physical trespass).

*Second*, the City claims that *Labell v. City of Chicago*, 147 N.E.3d 732 (Ill. App. 1 Dist. 2019)—which upheld the constitutionality of an amusement tax on streaming services—demonstrates that digital content can be a "thing." City Br. 23. But as the District Court thoroughly explained, the City's reliance on this case is "misplaced." App. 75 (Dkt. 206, at 24). The "thing" being taxed in *Labell* was "not the actual electronic transmission of . . . online video content," but the "patrons' purchase of or subscription to online shows, movies, or videos." *Id.* (citing 147 N.E.3d at 736). And even if the electronic transmission of video content was the "thing" being taxed, that would "not somehow make the transmission a tangible thing capable of physically invading and occupying" the City's land. *Id.*

The City's assertion that digital content can physically invade land threatens to dramatically expand Illinois tort law. Taken to its logical conclusion, the City's position would mean that every website, online service, and user that relies on ISPs to transmit their content (*i.e.*, the entire Internet) would be liable for trespass. The

District Court correctly recognized that this "absurd result . . . underscores the critical flaw in Plaintiff's trespass theory." *Id.* "When given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability," this Court "should choose the narrower and more reasonable path" unless and until the Illinois Supreme Court says otherwise. *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994).

### 3. The City cannot explain how the Streaming Companies interfered with its possessory rights.

Even if the City could demonstrate that the Streaming Companies physically invaded public land without permission, the City concedes that it "must also allege 'a wrongful interference with [its] actual possessory rights in the property'" that "subtract[s] from [its] use of the property." City Br. 20 (citations omitted). The District Court concluded that "the complaint fails to allege facts demonstrating that . . . the purported physical intrusion interfered with Plaintiff's possession of the rights-of-way." App. 75 (Dkt. 206, at 22).

The City has forfeited any argument to the contrary by not challenging that holding in its opening brief. *See* City Br. 19–24; *Torry v. City of Chicago*, 932 F.3d 579, 588–89 (7th Cir. 2019); *Wedemeyer*, 850 F.3d at 897. The City's forfeiture gives this Court an independent basis to affirm the District Court, *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018), because the failure to allege interference is dispositive to a trespass claim. *E.g.*, *Cahn v. City of Highland Park*, No. 11 CV 06082, 2012 WL 4483480, at *5 (N.D. Ill. Sept. 25, 2012).

Regardless, the City cannot explain how the ISPs' transmission of electromagnetic signals across wirelines that it has already authorized diminishes or interferes with its public rights-of-way. As the District Court explained, these signals are "incapable of taking up any physical space"; they do not "alter the physical condition of the public right-of-way" and thus cannot "subtract from [the City's] use of the public right-of-way." App. 75 (Dkt. 206, at 22). A plaintiff cannot recover in trespass by merely asserting that unwanted signals cross over its land. *See Brannan v. Am. Tel. & Tel. Co.*, 362 S.W.2d 236, 241 (Tenn. 1962); *cf. West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 831 (7th Cir. 2020) (noting "[i]nformation passing through a cable could not independently be a trespass"). Accordingly, the District Court rightly held that the City cannot recover here.

**B.    The City cannot state an unjust enrichment claim.**

The City has conceded that its unjust enrichment claim must "stand or fall" with its trespass claim. City Br. 24; *see also* Dkt. 184, at 69–70. The District Court agreed and correctly dismissed both claims together. App. 75 (Dkt. 206, at 24–25).

As explained above, the complaint failed to plausibly allege a trespass claim, and the unjust enrichment claim cannot survive without such a claim. *See Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. 1 Dist. 2014) ("Unjust enrichment does not constitute an independent cause of action."); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

**IV.    The District Court correctly dismissed the City's ordinance claim.**

The District Court correctly concluded that the City's ordinance claim failed because the relevant ordinances do not provide the City with a civil right of action, and even if they did, the complaint does not plausibly allege that the Streaming Companies "resell cable communication signals or service." App. 75 (Dkt. 206, at 25). Each of these flaws is "dispositive," *id.*, and the City makes little or no attempt to overcome them.

**A.    The City's ordinances do not authorize this action.**

The City alleges ordinance violations based on "East St. Louis Municipal Code § 82-19." App. 33 (Dkt. 167 ¶¶ 116–24). But as the District Court recognized, "a violation of § 82-19 is punishable as a misdemeanor" via an "administrative adjudication" before the "Regulatory Affairs Court." App. 75 (Dkt. 206, at 26) (citing E. St. Louis Code of Ordinances §§ 1-15, 2-241–61). The City did not seek an administrative adjudication before the Regulatory Affairs Court. Nor has it identified any ordinance that "provide[s] Plaintiff with an express or implied right of action" to enforce § 82-19 here. *Id.* at 25–28. Thus, the District Court properly dismissed the City's claim for a violation of § 82-19.

On appeal, the City argues that its ordinance claim survives under Illinois Supreme Court Rule 572. *See* City Br. 26–27. But that pleading rule does not apply in federal court. *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) (reciting "rudimentary" rule that "pleading requirements in the federal courts 'are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting'" (quoting 5 Wright & Miller, *Federal*

*Practice & Procedure* § 1204)); *accord Windy City Metal Fabricators & Supply v.*

*CIT Tech. Fin. Servs.*, 536 F.3d 663, 670 (7th Cir. 2008). Rule 572, moreover, applies

only to "an ordinance violation for which the penalty does not include the possibility

of a jail term." Ill. Sup. Ct. R. 572(a); *see also id.* R. 570 (explaining that Rules 570

through 579 do not apply when the prescribed penalty includes the possibility of

jail). And the City concedes that violations of § 82-19 may be punished by

"imprisonment not exceeding six months." App. 33 (Dkt. 167 ¶ 125) (quoting E. St.

Louis Code of Ordinances § 1-15). The City therefore cannot enforce § 82-19 via

Rule 572 in a civil action. Committee Cmt. to Rule 570 (Dec. 7, 2011).[20]

Unable to identify a right of action, the City instead faults the District Court

for "us[ing] information outside of the complaint" to consider the historical context

of § 82-19. City Br. 25. But the District Court appropriately cited judicially

noticeable materials in examining legislative purpose. *See* App. 75 (Dkt. 206, at 25);

*Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959); *Goe v. Zucker*, 43

F.4th 19, 29 (2d Cir. 2022); *see also* Advisory Committee Notes to Fed. R. Evid.

201(a) (defending propriety of judicially noticing "legislative facts"). And in any

event, the District Court's right of action analysis did not turn on its introductory

---

[20] As further support for Rule 572's inapplicability, the City's complaint failed to
comply with many of the Rule's procedural requirements. The complaint (1) was not
"verified as provided in section 1-109 of the Code of Civil Procedure," Ill. Sup. Ct. R.
572(a); (2) does not state "whether the defendant is required to appear in court" or
provide "the date, time and place of appearance," *id.* R. 572(a)(4); (3) does not
specify "the steps the defendant can take to avoid an otherwise required
appearance," *id.* R. 572(a)(5); and (4) does not explain "that the defendant may
demand a jury trial by filing a jury demand and paying a jury demand fee when
entering . . . [a] responsive pleading," *id.* R. 572(a)(6).

discussion about the circumstances preceding the enactment of § 82-19. *See* App. 75 (Dkt. 206, at 26–28).

### B.    The City's ordinances do not prohibit the alleged conduct.

In addition to the City's right of action problem, the City fails to allege any plausible ordinance violation. Section 82-19 provides that "[n]o person shall resell cable communication signals or service within the city without, prior to such sale, having obtained written consent and approval of both the operating franchise company and the city." But the sparse allegations in the complaint left the District Court "completely in the dark as to why Plaintiff thinks Defendants resold video content or how the purported resale scheme actually worked (including, for example, who Defendants bought the video content from, who they allegedly resold it to, or who Defendants needed to obtain consent and approval from as required by § 82-19)." App. 75 (Dkt. 206, at 27). Those observations remain true on appeal.

The City relies on alleged interconnection agreements between the Streaming Companies and the ISPs as the basis for its ordinance claim, *see* App. 33 (Dkt. 167 ¶¶ 113–15, 123), but it fails to allege how any such agreements involve any resale of service. Nor can it. The purported interconnection agreements would not enable the Streaming Companies to resell the ISPs' broadband access, which the City openly acknowledges is *not* part of the Streaming Companies' service. *See id.* ¶ 52 ("Defendants provide video content, not internet access. The 'service' . . . is provided by the ISPs and is not part of the services provided by Defendants."); *see also id.* ¶ 30; City Br. 8–9. Rather, the agreements purportedly allow the Streaming Companies to pay ISPs so that streaming customers will have "faster and more

reliable access" to the Streaming Companies' *own* content. App. 33 (Dkt. 167 ¶¶ 113–16). Under the City's own allegations, the purported agreements do not facilitate the "resale" of anything.[21]

But even if the purported agreements could somehow give rise to a "resale," that resale would not be of "cable service." Regardless of whether cable service involves "one-way transmission," 47 U.S.C. § 522(6), or a "closed-circuit system," E. St. Louis Code of Ordinances § 82-20, streaming services do not qualify.[22] As explained above, the Streaming Companies do not "transmit" any content to customers—ISPs do. And far from being delivered via a "closed-circuit system," consumers access the Streaming Companies' content via the "public Internet," which has many interconnection points and is accessible to anyone wherever there is a broadband connection. App. 33 (Dkt. 167 ¶ 52); *see* 47 U.S.C. § 151 Note, § 1105(4) (describing the Internet as a "network of networks"). It is well established that broadband internet service is not cable service. *See* Implementation of Section 621(a)(1) of the Cable Communications Policy Act, 34 FCC Rcd. 6,844, 6,896, ¶ 95 (2019) (distinguishing "broadband Internet access service" from cable service); Promoting Innovation and Competition in the Provision of Multichannel Video

---

[21] Although the complaint refers to Hulu's "ingestion" of video content from programming vendors, *id.* ¶ 56, the City nowhere connects that to any alleged resale, either.

[22] The complaint cites both the Cable Act, 47 U.S.C. § 522(6) (misquoted as 47 U.S.C. § 521), which is incorporated into the CVCL, 220 ILCS 5/21-201(e), and East St. Louis Municipal Code § 82-20 to ascertain the meaning of "cable service." *See* App. 33 (Dkt. 167, ¶¶ 119, 122). The City's ordinances do not directly define that term.

Programming Distribution Services, 29 FCC Rcd. 15,995 ¶¶ 71 n.199, 78 (2014) (distinguishing streaming services, which "travel over the public Internet," from "managed video services" that travel over a "cable system").

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's dismissal of the complaint with prejudice.

Respectfully submitted on May 4, 2023.

<table>
<tr>
<td>

John P. Jett
Ava J. Conger
K. Bradford Sears
KILPATRICK TOWNSEND
   & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

</td>
<td>

*/s/ Adam H. Charnes*
Adam H. Charnes
KILPATRICK TOWNSEND
   & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 922-7106
Facsimile: (214) 481-0517
acharnes@kilpatricktownsend.com

</td>
</tr>
</table>

*Counsel for DIRECTV, LLC and WarnerMedia Direct, LLC*

*/s/ Helgi C. Walker*
Helgi C. Walker
Jessica L. Wagner
Maria C. Monaghan
GIBSON, DUNN &
CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 887-3599
Facsimile: (202) 530-9595
hwalker@gibsondunn.com

*Counsel for Amazon.com Services LLC*

*/s/ David P. Murray*
David P. Murray
Matthew W. Johnson
WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 303-1112
Facsimile: (202) 303-2112
dmurray@willkie.com

*Counsel for Peacock TV, LLC*

Jordan S. Joachim
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
jjoachim@cov.com

*/s/ Mitchell A. Kamin*
Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
mkamin@cov.com
nsahni@cov.com

*Counsel for CBS Interactive Inc.*

Marc S. Martin
PERKINS COIE LLP
700 13th Street, NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
mmartin@perkinscoie.com

Kathleen Stetsko
PERKINS COIE LLP
110 North Wacker Drive,
34th Floor
Chicago, IL 60606
Telephone: (312) 324-8400
Facsimile: (312) 324-9400
kstetsko@perkinscoie.com

*/s/ Sunita Bali*
Sunita Bali
Elliott J. Joh
PERKINS COIE LLP
505 Howard Street
Suite 1000
San Francisco, CA 94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050
sbali@perksinscoie.com
ejoh@perkinscoie.com

*Counsel for YouTube LLC*

*/s/ Adam Bowser*
Adam Bowser
Morgan R. Pankow

ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
adam.bowser@afslaw.com
morgan.pankow@afslaw.com

*Counsel for CuriosityStream, Inc.*

*/s/ Daniel Campbell*
Daniel Campbell
Jennifer Aronoff
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
dcampbell@mwe.com
jaronoff@mwe.com

*Counsel for Apple Inc.*

Mary Rose Alexander
Robert C. Collins III
LATHAM & WATKINS LLP
333 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Mary.Rose.Alexander@lw.com
Robert.Collins@lw.com

*/s/ Gregory G. Garre*
Gregory G. Garre
Jean A. Pawlow
Peter E. Davis
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Gregory.Garre@lw.com
Jean.Pawlow@lw.com
Peter.Davis@lw.com

*Counsel for Netflix, Inc.*

/s/ Victor Jih

Darci F. Madden
Bryan Cave Leighton Paisner LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
dfmadden@bclplaw.com

Victor Jih
Kelly H. Yin
Wilson Sonsini Goodrich & Rosati, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-1650
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
vjih@wsgr.com
kyin@wsgr.com

*Counsel for Hulu, LLC and Disney Platform Distribution, Inc.*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE-STYLE REQUIREMENT

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) and Circuit Rule 32(c) because it contains 12,083 words. Consistent with

Fed. R. App. P. 32(f), the word count does not include the cover page, disclosure

statements, table of contents, table of authorities, signature block, or proof of

service.

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and Circuit Rule 32(b) and the typestyle requirements of Fed. R. App. P.

32(a)(6) because it has been prepared in a proportionally spaced typeface using

Microsoft Word 365 and 12-point Century Schoolbook font.

This 4th day of May, 2023.

*/s/ Adam H. Charnes*
Adam H. Charnes
KILPATRICK TOWNSEND
   & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone:  (214) 922-7100
Facsimile:  (214) 481-0517
acharnes@kilpatricktownsend.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Counsel for all parties are registered CM/ECF users and will be served with the foregoing document by the Court's CM/ECF System.

<div style="margin-left: 40%;">

*/s/ Adam H. Charnes*

Adam H. Charnes
KILPATRICK TOWNSEND
  & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 922-7100
Facsimile: (214) 481-0517
acharnes@kilpatricktownsend.com

</div>