No. 22-2905

THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

City of East St. Louis, Illinois,

Plaintiff-Appellant

v.

Netflix, Inc., Disney Platform Distribution, Inc., Apple Inc., Hulu LLC, WarnerMedia Direct, LLC, Amazon.com Services, LLC, CBS Interactive Inc., Youtube LLC, CuriosityStream, Inc., Peacock TV, LLC, DirecTV, LLC, and DISH Network, LLC

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois

Civil Action No. 2021-CV-00561
The Honorable Judge Mark A. Beatty

REPLY BRIEF OF
THE PLAINTIFF APPELLANT, THE CITY OF EAST ST. LOUIS, ILLINOIS

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
Melissa K. Sims
Attorney for the Plaintiff-Appellant

800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(800) 530-9800
msims@milberg.com

TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………………2

TABLE OF AUTHORITIES…………………………………………………………………..3

ARGUMENT…………………………………………………………………………………..4

    I.      The CVCL Applies to the Streaming Companies.……………………………….4

    II.     The City has Properly Pled Allegations of Physical Trespass in the Amended Complaint…………………………………………………………………………..7

    III.    The Allegations in the Amended Complaint Sufficiently Allege that the Streaming Companies have violated the East St. Louis Municipal Code and are Subject to Penalties for the Resale of Cable Communications………………………………….8

    IV.    The Federal Cable Act Does not Preempt the City's Claims………………………….9

    V.     The City has Alleged Facts that Allow the Court to Draw the Reasonable Inference that each Streaming Company is Liable for the Misconduct Alleged………………………9

CONCLUSION ........................................................................................................................11

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)……………………………………………………………………………………...13

PROOF OF SERVICE…………………………………………………………………………..14

CIRCUIT RULE 30 (d) STATEMENT……………………………………………………………15

TABLE OF AUTHORITIES

Cases

*Atkins v. Hasan,* No. 15-CV-203, 2015 WL 3862724 (N.D. Ill. June 22, 2015)……………...10

*Bank of Am., N.A. v. Knight,* 725 F.3d 815 (7th Cir. 2013)…………………………………....11

*Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)…………………………………………....10

*City of Dallas v. F.C.C.*, 165 F.3d 341, 348 (5th Cir. 1999)…………………………………...9

*City of Eugene, Oregon v. FCC*, 998 F.3d 701, 715 (6th Cir. 2021)……………………….…...5

*City of Ft. Scott v. Netflix, Inc.*, No. BB-2021-CV-000166, 2022 WL 16901200 (Kan. Dist. Ct., Bourbon Cnty. Oct. 10, 2022), *appeal filed*, No. 125784 (Kan. Ct. App. Nov. 22, 2022)………..5

*Warren v. Sheriff of Cook Cnty. Thomas Dart*, No. 09-cv-3512, 2010 U.S. Dist. LEXIS 124671, (N.D. Ill. Nov. 24, 2010)………………………………………………………………………10

Statutes

47 U.S.C. § 542(a)……………………………………………………………………………..9

47 U.S.C. §§ 522(5), (7)………………………………………………………………………9

220 ILCS 5/21-801……………………………………………………………………………..4,5

220 ILCS 5/21-1301……………………………………………………………………………4,5

Rules

Federal Rule Civil Procedure 12(b)(6)………………………………………………………6,9

Illinois Supreme Court Rule 572 .. ...........................................................................................8

Illinois Supreme Court Rule 522  ...............................................................................................8

City Ordinance

East St. Louis Code Ord. §82-19………………………………………………………………..8

East St. Louis Code Ord §1-15………………………………………………………………….8

ARGUMENT

I.    *The CVCL Applies to the Streaming Companies.*

The City of East St. Louis urges this Court apply the plain meaning of governing statute to the distinctive and plausible allegations of fact supporting this action to recoup wrongly withheld revenue necessary to the basic function of local government. The Court should also be concerned with the wider implications of its judgement, namely that a decision in favor of East St. Louis could establish a precedent for other local governments looking to recover similar revenues, and it might impact the operations of video content providers statewide. On the other hand, a ruling in favor of the content providers could uphold the current situation and possibly thwart the perceived intent of the Illinois legislature. All these considerations must be weighed to ensure a balanced, fair, and equitable decision, one that aligns as closely as possible with the legislative intent, which is clear from the legislative history cited in the City's opening brief.

The unambiguous language of the Cable and Video Competition Law ("CVCL") unequivocally grants municipalities like East St. Louis ("City") standing to file suit to enforce their right to secure payment of video service provider fees. 220 ILCS 5/21-801; 220 ILCS 5/21-1301. The statutory interpretation that Appellees suggest, adopted by the District Court, would lead to unexpected and irrational outcomes and would render parts of the CVCL irrelevant, in conflict with the purpose of the CVCL as reflected in legislative history.

Appellees encourage video service providers to overlook the CVCL's mandates and forgo seeking authorization—contradicting CVCL's express language requiring entities offering video service to obtain such authorization—by interpreting the statute to bar municipalities from pursuing claims for unpaid video service provider fees. Appellees' interpretation undermines the Illinois legislature's intent in adopting the CVCL to protect communities from losing revenue—a concern for each municipality. Brief of Appellant City of East St. Louis, at 16-17. The CVCL's express language preserving the local government's "right to enforce applicable rights and obligations" reflects the legislative intent to protect municipalities from losing revenue. 220 ILCS 5/21-1301(c). Franchise fees from video streaming companies are indeed the revenue that the City

is losing. The express language of the CVCL provides that the City has a right to receive those fees. 220 ILCS 5/21-801.

The Illinois legislature's intent to prevent municipalities from losing revenue is undermined by the District Court's reasoning that the language of Section 1301 regarding the right of local governments "to enforce applicable rights and obligations" is best understood as preserving the existing rights a local government may have (such as contract rights under a preexisting authorization) and the rights expressly provided for in the CVCL (such as the right to bring suit to contest certain transfers of ownership under Section 401(f)). (Memorandum and Order, at 11. Neither preserving contract rights under a preexisting authorization nor contesting transfers of ownership satisfies the legislative intent to prevent revenue loss incurred by the municipalities. The City's right of action is the *only* mechanism by which it could ever recover the franchise fees owing from these video service providers. Limiting the CVCL to authorize suit only against holders with preexisting authorizations, as the District Court held, and allowing Appellees to avoid their obligation to pay those franchise fees, would frustrate the purpose of the CVCL.

As did the District Court, Appellees improperly rely on rulings in lawsuits brought by other cities, in other states, for violations of different statutes, seeking different relief against the Streaming Companies. In their Response briefs, Appellees raise additional cases on top of those cited by the District Court, such as *City of Ft. Scott v. Netflix, Inc.*, to demonstrate that other courts have dismissed cases against them. *No. BB-2021-CV-000166, 2022 WL 16901200 (Kan. Dist. Ct., Bourbon Cnty. Oct. 10, 2022), appeal filed, No. 125784 (Kan. Ct. App. Nov. 22, 2022)*; Appellee's Br. 14. Yet the additional cases are no different than those the District Court improperly relied on when it failed to consider that the causes of action and relief requested here are different.

Indeed, the plaintiff cities in the cases referenced by Appellees sought to cure noncompliance by the Streaming Companies or to halt their services altogether. Appellant's Br. 17. Here, the City simply seeks the payment of the video service provider fees owing from these video service providers. The District Court erroneously ruled that the City was attempting to "compel video service providers who are non-holders to apply for a state-wide authorization under

the CVCL or to comply with the CVCL's requirements." Memorandum and Order, at 5. But the City never sought to compel Defendants to pay civil monetary penalties due the state or to force compliance with the Illinois Commerce Commission. The City sought only a declaration that the Streaming Companies violated the CVCL. Amended Complaint, relief (c), page 36. The City never sought to enforce or order the Streaming Companies to do anything besides pay the 5% gross revenue.

These cases also differ from this one because they did not involve common law claims. The City's allegations of trespass and violation of the City's ordinance concerning unlawful resale of cable service, and the factual basis for same, further distinguish this action and make reliance on other cities' cases improper. The factual basis of this action—which differs from other cities' cases— is paramount. The City's Amended Complaint alleges that the Streaming Companies have entered into paid interconnection agreements with existing holders of statewide authorization certificates to access the public rights of ways, install and connect Defendants' own equipment to connect to their servers and stream their content faster to consumers. Amended Complaint, at ¶¶6, 63-69, and footnotes 22, 23, 24. These interconnection agreements allow the Streaming Companies deliver content to streaming customers from servers in Defendants' data centers while skirting their obligation to pay a video service provider fee of 5% of their gross revenues to the municipalities derived from providing such video service in those municipalities. *Id.* ¶¶63-69. Precious revenue necessary to fund the critical government infrastructure that provides for the health, safety and welfare of Illinois residents is at risk, purely to line the pockets of the Streaming Companies. Contrary to the District Court's analysis, the precise manner in which the Streaming Companies bypassed regulatory requirements via interconnection agreements with existing holders is a fact issue that can only be decided after discovery and expert analysis. The District Court's ruling was premature and an incorrect application of Fed. R. Civ. P. 12(b)(6).

II.   *The City has Properly Pled Allegations of Physical Trespass in the Amended Complaint.*

If Appellees are not holders and have no authorization under the CVCL to use the City's wirelines, they have trespassed onto City property by providing video programming services to subscribers through facilities located partly in the City's public rights-of-way. Indeed, the City alleges that the transmission of Defendants' video content through the local internet service providers' (ISPs') wirelines constitutes a trespass. Amended Complaint, ¶48-58.

The District Court erred in reasoning "the complaint concedes that Defendants have not and do not install, operate, or maintain any physical infrastructure in the public rights-of-way." Memorandum and Order, at 19. To the contrary, the City alleged that the Streaming Companies store their video content on servers either within or directly connected to the private network facilities of a local internet service provider ("ISP"), and that ISPs rely on wireline facilities located in public rights of way. Amended Complaint, ¶35-69. In sum, Defendants deliver their content to subscribers through wireline facilities located in the public right of way. *Id.*

Based on an incorrect understanding of the law and the City's factual allegations, the District Court improperly concluded that video content is not a "thing" that Appellees have caused to enter the City's property without its permission, so that Appellees have not committed a trespass under Illinois law. Memorandum and Order, at 10. Yet consistent with Illinois law, and the City's allegations, the transmission of Defendants' video content through the local internet service providers (ISPs') wirelines is a physical intrusion that has interfered with the City's exclusive possession of its rights-of-way. Here, the Streaming Companies are alleged to have (1) connected their servers to local ISPs which exist in the public rights of way and (2) transmit their video content through equipment in those rights of way. Without those physical intrusions, the Streaming Companies could not provide their video content to their subscribers in the City.

III.  *The Allegations in the Amended Complaint Sufficiently Allege that the Streaming Companies have violated the East St. Louis Municipal Code and are Subject to Penalties for the Resale of Cable Communications.*

The City has properly pled that the Streaming Companies have resold cable communications in violation of §82-19 of the East St. Louis Municipal Code. The City has complied with the pleading of an ordinance violation as required by the Illinois Supreme Court Rule 522, which provides that a municipal citation include the nature of the offense and a reference to the relevant ordinance. Illinois Supreme Court Rule 572. The City has further pled that each resale is subject to a maximum $750 penalty pursuant to Section 1-15 of the East St. Louis Municipal Code. The City notified the Appellees that they are charged with the unauthorized resale of City property, stated all necessary requirements for an ordinance violation as required by the Illinois Supreme Court, Rule 572, Form of Charging Instrument. That rule requires that the charging instrument contains the nature of the offense and the reference to the relevant ordinance. Illinois Supreme Court Rule 572 (a)(4). The City further alleged a prayer for relief under Illinois Supreme Court Rule 572 (d). Accordingly, under Illinois substantive and procedural law, all of the pleading requirements have been met by the City.

The District Court, holding the City to a higher pleading standard than is proper in its 12(b)(6) analysis, stated it is in the dark as to why the City thinks Appellees resold video content or how the purported resale scheme actually worked. Memorandum and Order, at 26-27. Still, the City pled that Appellees purchased cable communication from the holders through their interconnection agreements and have since sold that cable communication to its subscribers, all without the permission of the City, as required by the Code. Amended Complaint, at ¶¶113-127. After that, the exact mechanism of how the Appellees resold through their interconnection agreements with existing holders is a fact issue that can only be decided after discovery and expert

analysis reveal the precise nature of the agreements. This is yet another example of how the District Court's ruling was at best premature, given the strictures of Fed. R. Civ. P. 12(b)(6) procedure.

    IV.    *The Federal Cable Act Does not Preempt the City's Claims.*

Appellees continue to distort the purpose of a franchise fee by insisting that "*[i]t is in exchange for being permitted to tear up sidewalks, erect poles, and bury and string wires in public rights of way*." Appellee's Br. 18 (*citing* 47 U.S.C. § 542(a); 47 U.S.C. §§ 522(5), (7)). But neither of the cited provisions of the Cable Act provides this fee is imposed on cable operators exclusively for the license to dig up sidewalk or construct equipment. 47 U.S.C. § 542(a); 47 U.S.C. §§ 522(5), (7). As with the CVCL, the franchise fee imposed is not so limited in scope.

Appellees then assert that applying the CVCL to the Streaming Companies is preempted by the Cable Act. Appellee's Br. 17. Appellees rely on *City of Eugene, Oregon v. FCC*, 998 F.3d 701, 715 (6th Cir. 2021), to argue that non-cable services are not subject to franchise fees or other exercises of franchise authority. Appellee's Br. 19-20. Appellees assert that the FCC's interpretation of the Cable Act concluded that local franchising authorities are preempted from applying franchise requirements to *non-cable services*. Appellee's Br. 20. But the court in *Eugene* largely disagreed with the FCC's interpretation as it did not follow the Cable Act's terms. *City of Eugene v. FCC*, 998 F.3d 701, 710-11 (6th Cir. 2021) ("the Act nowhere states or implies that franchisors may regulate cable operators only as "expressly permitted in the Act."). As the Court concluded, the Cable Act does not state or even imply that franchising authorities may regulate *only* cable operators. *Id.*; *accord City of Dallas v. F.C.C.*, 165 F.3d 341, 348 (5th Cir. 1999). Appellees conveniently avoided addressing the key holding of the opinion. Thus, their argument is, again, unsubstantiated.

    V.    *The City has Alleged Facts that Allow the Court to Draw the Reasonable Inference that each Streaming Company is Liable for the Misconduct Alleged.*

Appellees contend that the City has not put forth specified allegations for each individual Streaming Company. Appellee's Br. 21 (citing *Atkins v. Hasan,* No. 15-CV-203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) and *Bank of Am., N.A. v. Knight,* 725 F.3d 815 (7th Cir. 2013)). None of the cases Appellees cite supports their argument.

In *Atkins*, the plaintiffs used ambiguous phrasing that failed to notify each defendant of what actions they engaged in directly. No. 15-CV-203, 2015 WL 3862724, at *8. Appellees employ this case to assert that, by not specifying the actions of each defendant, the City's claims are too ambiguous and vague, and thus fail to state a claim. Appellee's Br. 21. But the plaintiffs in *Atkins* did not even allege that "the defendants" committed the actions, but rather "the [d]efendants, *or other individuals acting at the direction of, agreement with and/or with the actual knowledge of the [d]efendants*." No. 15-CV-203, 2015 WL 3862724, at *8 (emphasis added). That language was understandably inadequate, and much vaguer than any of the language used within the City's Amended Complaint. Additionally, the court in *Atkins* affirms that simply referring to "the defendants" without further specification is enough to plead their individual involvement in the case. *Id.* at *8 (referencing *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)). Furthermore, when multiple defendants are involved, a plaintiff is not required to deconstruct which of the named defendants were responsible for which alleged acts or omissions, so long as all were allegedly on notice of a particular risk. *See Warren v. Sheriff of Cook Cnty. Thomas Dart*, No. 09-cv-3512, 2010 U.S. Dist. LEXIS 124671, at *7 (N.D. Ill. Nov. 24, 2010).

Appellees also rely on *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Once again, the plaintiffs' complaint in that case was far more ambiguous than here. Appellant's Br. 6. The plaintiffs simply alleged, without any further elaboration, that "the defendants looted the corporation." 725 F.3d at 818. Such language did not amount to a plausible assertion that any

particular person did anything wrong. *Id.* By contrast, the City's complaint was not vague, giving examples of what all the Defendants have done, even citing specific examples. Am. Compl ¶¶ 51-62.

Another final distinguishing factor is the nature of these cases. The two cases Appellees rely on involve different defendants engaging in different conduct leading to different consequences. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013) (proof of fraud and conspiracy); *see also Atkins v. Hasan*, No. 15-CV-203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) (unlawful detainment, due-process, intentional infliction of emotional distress, and more). Here, Appellees' wrongful conduct is the same and has led to the same consequences—violating the CVCL by failing to pay the required franchise fees owing to the City. Indeed, Appellees concede the allegation is the same as to each. Appellee's Br. 22 ("the Streaming Companies have skirted the obligation to pay franchise fees through peering agreements that facilitate direct connections to purportedly private networks run by ISPs."). Given the conduct is the same and results in the same consequences, the City has satisfied the standard of facial plausibility.

ORAL ARGUMENT REQUESTED.

## CONCLUSION

For those reasons stated above, the City respectfully requests that this Court vacate the district court's September 23, 2022 order dismissing the City's Amended Complaint and remand this matter to the district court for further proceedings.

Respectfully submitted,

CITY OF EAST ST. LOUIS

*/s/ Melissa K. Sims*
Melissa K. Sims
Marc D. Grossman
Greg Coleman

11

Daniel K. Bryson  
Patrick M. Wallace  
James DeMay  
Vicki J. Maniatis  
Andrew A. Lemmon  
Milberg Coleman Bryson Phillips Grossman, PLLC  
800 S. Gay Street, Suite 1100  
Knoxville, TN 37929  
(800) 530-9800  
mgrossman@milberg.com  
msims@milberg.com  
gcoleman@milberg.com  
dbryson@milberg.com  
pwallace@milberg.com  
jdemay@milberg.com  
vmaniatis@milberg.com  
alemmon@milberg.com  

Roy L. Mason  
Zachery E. Howerton  
Smouse & Mason, LLC  
223 Duke of Gloucester Street  
Annapolis, MD 21401  
410-269-6620  
Fax: 410-269-1235  
zeh@smouseandmason.com  

John J. Driscoll  
Driscoll Firm, LLC  
1311 Avenida Juan Ponce de Leon  
6th Floor  
San Juan, PR 00907  
618-444-6049  
Fax: 314-932-3233  
john@jjlegal.com  

John Baricevic  
Charles J Baricevic  
Chatham & Baricevic  
107 West Main Street  
Suite 1  
Belleville, IL 62220  
618-233-2200  
Fax: 618-233-1589  
cj@chathamlaw.org

# CERTIFICATE OF COMPLIANCE WITH
# FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)

The undersigned, counsel of record for the Plaintiff-Appellant, the City of East St. Louis, Illinois, furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 3518 words.

Dated: May 25, 2023

Respectfully submitted,

**CITY OF EAST ST. LOUIS**

*/s/ Melissa K. Sims*
Melissa K. Sims
Milberg Coleman Bryson Phillips Grossman, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(800) 530-9800
msims@milberg.com

**PROOF OF SERVICE**

The undersigned, counsel for the Plaintiff-Appellant, the City of East St. Louis, Illinois, hereby certifies that on May 25, 2023, two copies of the Reply Brief as well as a digital version containing the brief, were delivered by Melissa K. Sims, to counsel for the Defendants-Appellees, Netflix, Inc., Disney Platform Distribution, Inc., Apple Inc., Hulu LLC, WarnerMedia Direct, LLC, Amazon.com Services, LLC, CBS Interactive Inc., Youtube LLC, CuriosityStream, Inc., Peacock TV, LLC, DirecTV, LLC, and DISH Network, LLC.

Dated May 25, 2023

Respectfully submitted,

**CITY OF EAST ST. LOUIS**

*/s/ Melissa K. Sims*
Melissa K. Sims
Milberg Coleman Bryson Phillips Grossman, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(800) 530-9800
msims@milberg.com

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

See also:

Circuit Rule 30(a)

Circuit Rule 30(b)

and

*United States v. Rogers*, 270 F.3d 1076, 1084 (7th Cir. 2001);

*In re Mix*, Disciplinary Case D-134, 901 F.2d 143 (7th Cir. 1990);

*Mortell v. Mortell*, 887 F.2d 1322 (7th Cir. 1989).

May 25, 2023

                              Respectfully submitted,

                              **CITY OF EAST ST. LOUIS**

                              */s/ Melissa K. Sims*
                              Melissa K. Sims
                              Milberg Coleman Bryson Phillips Grossman, PLLC
                              800 S. Gay Street, Suite 1100
                              Knoxville, TN 37929
                              (800) 530-9800
                              msims@milberg.com