# EXHIBIT A

Public Act 103-0360

HB3808 Enrolled                                    LRB103 30973 AMQ 57562 b

AN ACT concerning regulation.

**Be it enacted by the People of the State of Illinois, represented in the General Assembly:**

Section 5. The Public Utilities Act is amended by changing Sections 21-201 and 21-801 as follows:

(220 ILCS 5/21-201)

(Section scheduled to be repealed on December 31, 2026)

Sec. 21-201. Definitions. As used in this Article:

(a) "Access" means that the cable or video provider is capable of providing cable services or video services at the household address using any technology, other than direct-to-home satellite service, that provides 2-way broadband Internet capability and video programming, content, and functionality, regardless of whether any customer has ordered service or whether the owner or landlord or other responsible person has granted access to the household. If more than one technology is used, the technologies shall provide similar 2-way broadband Internet accessibility and similar video programming.

(b) "Basic cable or video service" means any cable or video service offering or tier that includes the retransmission of local television broadcast signals.

(c) "Broadband service" means a high speed service

connection to the public Internet capable of supporting, in at least one direction, a speed in excess of 200 kilobits per second (kbps) to the network demarcation point at the subscriber's premises.

(d) "Cable operator" means that term as defined in item (5) of 47 U.S.C. 522.

(e) "Cable service" means that term as defined in item (6) of 47 U.S.C. 522.

(f) "Cable system" means that term as defined in item (7) of 47 U.S.C. 522.

(g) "Commission" means the Illinois Commerce Commission.

(h) "Competitive cable service or video service provider" means a person or entity that is providing or seeks to provide cable service or video service in an area where there is at least one incumbent cable operator.

(i) "Designated market area" means a designated market area, as determined by Nielsen Media Research and published in the 1999-2000 Nielsen Station Index Directory and Nielsen Station Index United States Television Household Estimates or any successor publication. For any designated market area that crosses State lines, only households in the portion of the designated market area that is located within the holder's telecommunications service area in the State where access to video service will be offered shall be considered.

(j) "Footprint" means the geographic area designated by the cable service or video service provider as the geographic

area in which it will offer cable services or video services during the period of its State-issued authorization. Each footprint shall be identified in terms of either (i) exchanges, as that term is defined in Section 13-206 of this Act; (ii) a collection of United States Census Bureau Block numbers (13 digit); (iii) if the area is smaller than the areas identified in either (i) or (ii), by geographic information system digital boundaries meeting or exceeding national map accuracy standards; or (iv) local units of government.

(k) "Holder" means a person or entity that has received authorization to offer or provide cable or video service from the Commission pursuant to Section 21-401 of this Article.

(l) "Household" means a house, an apartment, a mobile home, a group of rooms, or a single room that is intended for occupancy as separate living quarters. Separate living quarters are those in which the occupants live and eat separately from any other persons in the building and that have direct access from the outside of the building or through a common hall. This definition is consistent with the United States Census Bureau, as that definition may be amended thereafter.

(m) "Incumbent cable operator" means a person or entity that provided cable services or video services in a particular area under a franchise agreement with a local unit of government pursuant to Section 11-42-11 of the Illinois Municipal Code (65 ILCS 5/11-42-11) or Section 5-1095 of the

Public Act 103-0360

HB3808 Enrolled                                LRB103 30973 AMQ 57562 b

Counties Code (55 ILCS 5/5-1095) on January 1, 2007.

(n) "Local franchising authority" means the local unit of government that has or requires a franchise with a cable operator, a provider of cable services, or a provider of video services to construct or operate a cable or video system or to offer cable services or video services under Section 11-42-11 of the Illinois Municipal Code (65 ILCS 5/11-42-11) or Section 5-1095 of the Counties Code (55 ILCS 5/5-1095).

(o) "Local unit of government" means a city, village, incorporated town, or county.

(p) "Low-income household" means those residential households located within the holder's existing telephone service area where the average annual household income is less than $35,000, based on the United States Census Bureau estimates adjusted annually to reflect rates of change and distribution.

(q) "Public rights-of-way" means the areas on, below, or above a public roadway, highway, street, public sidewalk, alley, waterway, or utility easements dedicated for compatible uses.

(r) "Service" means the provision of cable service or video service to subscribers and the interaction of subscribers with the person or entity that has received authorization to offer or provide cable or video service from the Commission pursuant to Section 21-401 of this Act.

(s) "Service provider fee" means the amount paid under

Public Act 103-0360

HB3808 Enrolled                                LRB103 30973 AMQ 57562 b

Section 21-801 of this Act by the holder to a municipality, or in the case of an unincorporated service area to a county, for service areas within its territorial jurisdiction, but under no circumstances shall the service provider fee be paid to more than one local unit of government for the same portion of the holder's service area.

(t) "Telecommunications service area" means the area designated by the Commission as the area in which a telecommunications company was obligated to provide non-competitive local telephone service as of February 8, 1996 as incorporated into Section 13-202.5 of this Act.

(u) "Video programming" means that term as defined in item (20) of 47 U.S.C. 522.

(v) "Video service" means video programming <u>provided by a video service provider</u> and subscriber interaction, if any, that is required for the selection or use of such video programming services, and that is provided through wireline facilities located at least in part in the public rights-of-way without regard to delivery technology, including Internet protocol technology. This definition does not include <u>the following: (1)</u> any video programming provided by a commercial mobile service provider defined in subsection (d) of 47 U.S.C. 332<u>; (2) direct-to-home satellite services defined in subsection (v) of 47 U.S.C. 303;</u> or <u>(3)</u> any video programming ~~provided solely as part of, and~~ <u>accessed</u> via <u>a</u>~~,~~ service that enables users to access content, information,

Public Act 103-0360

HB3808 Enrolled                          LRB103 30973 AMQ 57562 b

electronic mail, or other services offered over the ~~public~~ Internet<ins>, including Internet streaming content</ins>.

(Source: P.A. 100-20, eff. 7-1-17.)


(220 ILCS 5/21-801)

(Section scheduled to be repealed on December 31, 2026)

Sec. 21-801. Applicable fees payable to the local unit of government.

(a) Prior to offering cable service or video service in a local unit of government's jurisdiction, a holder shall notify the local unit of government. The notice shall be given to the local unit of government at least 10 days before the holder begins to offer cable service or video service within the boundaries of that local unit of government.

(b) In any local unit of government in which a holder offers cable service or video service on a commercial basis, the holder shall be liable for and pay the service provider fee to the local unit of government. The local unit of government shall adopt an ordinance imposing such a fee. The holder's liability for the fee shall commence on the first day of the calendar month that is at least 30 days after the holder receives such ordinance. For any such ordinance adopted on or after the effective date of this amendatory Act of the 99th General Assembly, the holder's liability shall commence on the first day of the calendar month that is at least 30 days after the adoption of such ordinance. The ordinance shall be sent by

Public Act 103-0360

HB3808 Enrolled                         LRB103 30973 AMQ 57562 b

mail, postage prepaid, to the address listed on the holder's application provided to the local unit of government pursuant to item (6) of subsection (b) of Section 21-401 of this Act. The fee authorized by this Section shall be 5% of gross revenues or the same as the fee paid to the local unit of government by any incumbent cable operator providing cable service. The payment of the service provider fee shall be due on a quarterly basis, 45 days after the close of the calendar quarter. If mailed, the fee is considered paid on the date it is postmarked. Except as provided in this Article, the local unit of government may not demand any additional fees or charges from the holder and may not demand the use of any other calculation method other than allowed under this Article.

(c) For purposes of this Article, "gross revenues" means all consideration of any kind or nature, including, without limitation, cash, credits, property, and in-kind contributions received by the holder for the operation of a cable or video system to provide cable service or video service within the holder's cable service or video service area within the local unit of government's jurisdiction.

   (1) Gross revenues shall include the following:

      (i) Recurring charges for cable service or video service.

      (ii) Event-based charges for cable service or video service, including, but not limited to, pay-per-view and video-on-demand charges.

Public Act 103-0360

HB3808 Enrolled                              LRB103 30973 AMQ 57562 b

    (iii) Rental of set-top boxes and other cable service or video service equipment.

    (iv) Service charges related to the provision of cable service or video service, including, but not limited to, activation, installation, and repair charges.

    (v) Administrative charges related to the provision of cable service or video service, including but not limited to service order and service termination charges.

    (vi) Late payment fees or charges, insufficient funds check charges, and other charges assessed to recover the costs of collecting delinquent payments.

    (vii) A pro rata portion of all revenue derived by the holder or its affiliates pursuant to compensation arrangements for advertising or for promotion or exhibition of any products or services derived from the operation of the holder's network to provide cable service or video service within the local unit of government's jurisdiction. The allocation shall be based on the number of subscribers in the local unit of government divided by the total number of subscribers in relation to the relevant regional or national compensation arrangement.

    (viii) Compensation received by the holder that is derived from the operation of the holder's network to

provide cable service or video service with respect to commissions that are received by the holder as compensation for promotion or exhibition of any products or services on the holder's network, such as a "home shopping" or similar channel, subject to item (ix) of this paragraph (1).

(ix) In the case of a cable service or video service that is bundled or integrated functionally with other services, capabilities, or applications, the portion of the holder's revenue attributable to the other services, capabilities, or applications shall be included in gross revenue unless the holder can reasonably identify the division or exclusion of the revenue from its books and records that are kept in the regular course of business.

(x) The service provider fee permitted by subsection (b) of this Section.

(2) Gross revenues do not include any of the following:

(i) Revenues not actually received, even if billed, such as bad debt, subject to item (vi) of paragraph (1) of this subsection (c).

(ii) Refunds, discounts, or other price adjustments that reduce the amount of gross revenues received by the holder of the State-issued authorization to the extent the refund, rebate,

credit, or discount is attributable to cable service or video service.

(iii) Regardless of whether the services are bundled, packaged, or functionally integrated with cable service or video service, any revenues received from services not classified as cable service or video service, including, without limitation, revenue received from telecommunications services, information services, or the provision of directory or Internet advertising, including yellow pages, white pages, banner advertisement, and electronic publishing, or any other revenues attributed by the holder to noncable service or nonvideo service in accordance with the holder's books and records and records kept in the regular course of business and any applicable laws, rules, regulations, standards, or orders.

(iv) The sale of cable services or video services for resale in which the purchaser is required to collect the service provider fee from the purchaser's subscribers to the extent the purchaser certifies in writing that it will resell the service within the local unit of government's jurisdiction and pay the fee permitted by subsection (b) of this Section with respect to the service.

(v) Any tax or fee of general applicability imposed upon the subscribers or the transaction by a

city, State, federal, or any other governmental entity and collected by the holder of the State-issued authorization and required to be remitted to the taxing entity, including sales and use taxes.

(vi) Security deposits collected from subscribers.

(vii) Amounts paid by subscribers to "home shopping" or similar vendors for merchandise sold through any home shopping channel offered as part of the cable service or video service.

(viii) Any revenues received from video programming accessed via a service that enables users to access content, information, electronic mail, or other services offered over the Internet, including Internet streaming content.

(3) Revenue of an affiliate of a holder shall be included in the calculation of gross revenues to the extent the treatment of the revenue as revenue of the affiliate rather than the holder has the effect of evading the payment of the fee permitted by subsection (b) of this Section which would otherwise be paid by the cable service or video service.

(d)(1) Except for a holder providing cable service that is subject to the fee in subsection (i) of this Section, the holder shall pay to the local unit of government or the entity designated by that local unit of government to manage public, education, and government access, upon request as support for

public, education, and government access, a fee equal to no less than (i) 1% of gross revenues or (ii) if greater, the percentage of gross revenues that incumbent cable operators pay to the local unit of government or its designee for public, education, and government access support in the local unit of government's jurisdiction. For purposes of item (ii) of paragraph (1) of this subsection (d), the percentage of gross revenues that all incumbent cable operators pay shall be equal to the annual sum of the payments that incumbent cable operators in the service area are obligated to pay by franchises and agreements or by contracts with the local government designee for public, education and government access in effect on January 1, 2007, including the total of any lump sum payments required to be made over the term of each franchise or agreement divided by the number of years of the applicable term, divided by the annual sum of such incumbent cable operator's or operators' gross revenues during the immediately prior calendar year. The sum of payments includes any payments that an incumbent cable operator is required to pay pursuant to item (3) of subsection (c) of Section 21-301.

(2) A local unit of government may require all holders of a State-issued authorization and all cable operators franchised by that local unit of government on June 30, 2007 (the effective date of this Section) in the franchise area to provide to the local unit of government, or to the entity designated by that local unit of government to manage public,

education, and government access, information sufficient to calculate the public, education, and government access equivalent fee and any credits under paragraph (1) of this subsection (d).

(3) The fee shall be due on a quarterly basis and paid 45 days after the close of the calendar quarter. Each payment shall include a statement explaining the basis for the calculation of the fee. If mailed, the fee is considered paid on the date it is postmarked. The liability of the holder for payment of the fee under this subsection shall commence on the same date as the payment of the service provider fee pursuant to subsection (b) of this Section.

(e) The holder may identify and collect the amount of the service provider fee as a separate line item on the regular bill of each subscriber.

(f) The holder may identify and collect the amount of the public, education, and government programming support fee as a separate line item on the regular bill of each subscriber.

(g) All determinations and computations under this Section shall be made pursuant to the definition of gross revenues set forth in this Section and shall be made pursuant to generally accepted accounting principles.

(h) Nothing contained in this Article shall be construed to exempt a holder from any tax that is or may later be imposed by the local unit of government, including any tax that is or may later be required to be paid by or through the holder with

Public Act 103-0360

HB3808 Enrolled                                     LRB103 30973 AMQ 57562 b

respect to cable service or video service. A State-issued authorization shall not affect any requirement of the holder with respect to payment of the local unit of government's simplified municipal telecommunications tax or any other tax as it applies to any telephone service provided by the holder. A State-issued authorization shall not affect any requirement of the holder with respect to payment of the local unit of government's 911 or E911 fees, taxes, or charges.

(i) Except for a municipality having a population of 2,000,000 or more, the fee imposed under paragraph (1) of subsection (d) by a local unit of government against a holder who is a cable operator shall be as follows:

   (1) the fee shall be collected and paid only for capital costs that are considered lawful under Subchapter VI of the federal Communications Act of 1934, as amended, and as implemented by the Federal Communications Commission;

   (2) the local unit of government shall impose any fee by ordinance; and

   (3) the fee may not exceed 1% of gross revenue; if, however, on the date that an incumbent cable operator files an application under Section 21-401, the incumbent cable operator is operating under a franchise agreement that imposes a fee for support for capital costs for public, education, and government access facilities obligations in excess of 1% of gross revenue, then the

Public Act 103-0360

HB3808 Enrolled                                    LRB103 30973 AMQ 57562 b

    cable operator shall continue to provide support for capital costs for public, education, and government access facilities obligations at the rate stated in such agreement.

(Source: P.A. 99-6, eff. 6-29-15; 100-20, eff. 7-1-17.)